Defendant's counsel shall submit an order in accordance with this decision.

TOWNSHIP OF LAWRENCE, ET ALS., PLAINTIFFS, v. EWING–LAWRENCE SEWERAGE AUTHORITY, DEFENDANT.

Superior Court of New Jersey
Law Division Mercer County

Decided April 10, 1989.

*Robert A. Gladstone* for plaintiffs (*Schaff, Motiuk, Gladstone, Moeller & Reed,* attorneys).

*George W. Fisher* for defendant (*Mason, Griffin & Pierson,* attorneys).

LEVY, J.S.C.

The Ewing–Lawrence Sewerage Authority (ELSA) is a public agency organized pursuant to the Sewerage Authority Law (*N.J.S.A.* 40:14A–1 *et seq.*). It was created by joint resolutions of Ewing and Lawrence Townships in 1947; there are six members, three appointed from each municipality. ELSA is reorganized annually in February. At the reorganization meeting, among other business, resolutions are usually offered to engage the services of an attorney, auditor-accountant, engineer, bond counsel and investment advisor, until the next reorganization meeting.

In 1986 and an indeterminate number of prior years, these professionals were hired for one-year terms; the resolutions always said they were retained for "a period of one year." On February 3, 1987, the annual reorganization meeting was convened. Charles F. Harris was appointed attorney; Groendyke

and Company was appointed auditor-accountant [1]; Buck, Siefert & Jost was appointed engineer; Hawkins, Delafield & Wood was appointed bond counsel, and Kidder, Peabody & Co. was appointed investment broker.

In each instance, the professional was appointed by a resolution which specified the term as "a period of one year or until a successor is appointed." There was no discussion at the meeting concerning the new language, and plaintiffs, Rosenblum and Dyer, testified that the form of resolution presented to them before the meeting set the term as only "for a period of one year."

The change was authored by ELSA Chairman, S. Leonard DiDonato, who testified that revised forms of resolution were physically before the ELSA members at the meeting. Draft minutes of that meeting were sent to all members for the next meeting on February 17, 1987, and these minutes contained the complete language of the resolutions, including the phrase "or until a successor is appointed." The minutes were approved at that later meeting, and even plaintiffs, Rosenblum and Dyer, voted for approval. Thus, the resolutions, certified by the executive director of ELSA, state that the professionals were appointed "for a period of one year or until a successor is appointed."

Similar resolutions were offered at the 1988 reorganizational meeting, but the members voting were deadlocked. No action was ever taken to further retain professionals for fiscal year 1988 or 1989. The issue to be decided herein is whether those professionals retained in 1987 were to continue providing services in subsequent fiscal years when their contracts were not renewed. Regardless of which form of resolution was before the ELSA members on February 3, 1987, the Local Public Contracts Law prohibits an agreement for professional services from exceeding 12 consecutive months. *See N.J.S.A.* 40A:11–

---

[1] Groendyke and Company was only temporarily appointed until other competitive proposals could be solicited.

15. The language used by ELSA to extend the term of its professionals beyond 12 months is surplusage and *ultra vires.* ELSA cannot continue to use the services and pay for them without new contracts.[2]

In order to decide the current issue concerning the status of the professionals, it is not necessary to determine whether the hiring resolutions of 1987 were passed in one form or the other. At that time, each professional made a proposal to ELSA seeking to be retained for the following year. In a letter dated January 28, 1987, Harris offered to serve as attorney "for the year 1987 at the same hourly rate charged for 1986" and he sought an increase in "the annual retainer" which had been in effect for the past three years. Under date of January 20, 1987, Buck, Seifert & Jost sought to furnish "engineering services on an annual retainer basis for the year beginning February 1, 1987." Groendyke and Company proposed on January 7, 1987, that it be hired as ELSA's accountant and auditor "for the year 1987" with specific reference to the audit of 1987 and the 1987–1988 budget. In each case, the hiring resolution adopted by ELSA referred to the Local Public Contracts Law, recognizing that public advertising and a specification of reasons were required in order to make an agreement for professional services without competitive bidding.[3]

The proposals from these three professionals [4] demonstrate that each of them sought to be retained for the ensuing fiscal year, a period of 12 months. Defendants argue that Harris is an employee of ELSA because he is required to contribute to the Public Employees Retirement System. To the extent of his

---

[2]ELSA could ratify the payments made, for services rendered for fiscal year 1988 and to date for fiscal year 1989, by adopting appropriate resolutions, for the appropriate time periods, by a majority vote.

[3]*N.J.S.A.* 40A:11–5(1)(a)(i).

[4]Plaintiffs have not amended their complaint to include the bond counsel and the investment advisor. Rather, they have advised the court that the other professionals would be bound by this decision, so the amendment would be

paid retainer, this is true [5], but he is, at most, an employee for one year, and the fact that he contributed to the pension system cannot extend the term of his employment. He provided professional services as an outside consultant, not as a staff attorney. His annual retainer was charged to the payroll account and his other billings to the professional services account. The retainer amounted to less than ten percent of his annual billings in 1987 and in 1988. Each year he sought approval from the ELSA board of his re-engagement, the size of his retainer and the rate of his additional billings. Although ELSA deducted income taxes, social security and pension contributions from his quarterly payments on account of the retainer, no control was exercised over the manner in which he provided legal services. There was no control over sick days, personal days or vacation days, and ELSA did not provide a place for him to work nor any supplies, equipment or secretarial services to aid him in the practice of law. He was, and is, a well respected attorney, in private practice, and ELSA is one of his significant clients.

Pursuant to *N.J.S.A.* 40:14A–7(13), ELSA has the authority to make a contract in furtherance of the purposes of the sewerage authority, subject to the Local Public Contracts Law. With respect to awarding a contract for professional services, the Local Public Contracts Law provides that for a cost of less than $8,400, no advertising is needed, and the agreement may be made for a period of 12 consecutive months. *See N.J.S.A.* 40A:11–3(a). For a greater cost, advertising is usually required but not for professional services. Under such circumstances, *N.J.S.A.* 40A:11–5(1)(a)(i), provides:

The governing body shall in each instance state supporting reasons for its action in the resolution awarding each contract and shall forthwith cause to be

---

superfluous. Testimony indicated that neither of these professionals provided any services from February, 1987 to date.

[5] *Cf. Fasolo v. Pensions Div. Trustees,* 181 *N.J.Super.* 434 (App.Div.1981), certif. den. 97 *N.J.* 660 (1984).

> printed once, in a newspaper authorized by law to publish its advertisements, a brief notice stating the nature, *duration*, service and amount of the contract.... [emphasis supplied]

After the resolutions were passed by ELSA, the newspaper advertisement stated: "The Ewing–Lawrence Sewerage Authority of Mercer County has awarded contracts for a period of one year...." This is consistent with the statutory limitation on such contracts found in *N.J.S.A.* 40A:11–15 stating that:

> *All* purchases, *contracts or agreements for* the performing of work or *the furnishing of* materials, supplies or *services shall be made for a period not to exceed 12 consecutive months....* [emphasis supplied]

Certain exceptions have been added by the Legislature, but no exception has been made for professional services. Thus, persons providing professional services are precluded from remaining in office for more than one year unless reappointed by a majority of the sewerage authority's members. By application of this statute, all the ELSA professional contracts made at the 1987 reorganization meeting, regardless of the qualifying language found in the resolutions of record, expired as a matter of law in February 1988. Where the statute says that such agreements were "not to exceed 12 consecutive months," it leaves no room for interpretation. There is no lack of clarity which would permit this period of time to be extended "until a successor is appointed."

Therefore the court concludes that any contractual relationship between ELSA and Charles F. Harris, Groendyke and Company and Buck, Seifert & Jost terminated February 3, 1988. It would be against the public interest to permit ELSA to obtain further services from any of them under the aegis of the February 1987 hiring resolutions. ELSA is, therefore, ordered to refrain from doing so without fresh authorization by a majority of the members of the authority.

Plaintiffs should submit an appropriate order pursuant to *R.* 4:42–1(c).