181 N.J. Super. 434 (1981)
438 A.2d 328
WILLIAM A. FASOLO, PLAINTIFF-APPELLANT,
v.
BOARD OF TRUSTEES OF DIVISION OF PENSIONS OF NEW JERSEY TREASURY AND WILLIAM J. JOSEPH ITS DIRECTOR, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 1981.
Decided July 2, 1981.
*435 Before Judges MATTHEWS, MORTON I. GREENBERG and LOFTUS.
William A. Fasolo argued the cause for appellant (Fasolo, Kraus & Dexter, attorneys).
*436 William P. Malloy, Deputy Attorney General, argued the cause for respondent (James R. Zazzali, Attorney General, attorney for respondent; John J. Degnan, former Attorney General, and Erminie L. Conley, Assistant Attorney General, of counsel).
PER CURIAM.
William A. Fasolo appeals from a decision of the Board of Trustees of the Public Employees Retirement System (PERS). The issues raised on this appeal relate to the definition of "compensation" as used in N.J.S.A. 43:15A-6 r. Specifically, we are concerned with whether certain payments made to Fasolo, an attorney at law of New Jersey, by public employers should be considered compensation for purposes of this section.
The procedural background of the matter is somewhat involved. Fasolo was employed by the Boroughs of Demarest and New Milford as borough attorney. Additionally, he was employed on August 20, 1969 by Demarest as "sewer attorney," a position recognized by municipal ordinance.[1] Although the New Milford employment lasted from January 1, 1951 until January 1, 1963 and the Demarest employment as borough attorney started January 1, 1953 and lasted until January 1, 1972, Fasolo first applied for membership in PERS by application dated April 1, 1964.[2] Fasolo's employment as Demarest sewer attorney lasted until 1975. Fasolo was enrolled in PERS in April 1965 by reason of his employment in New Milford. However, he was not originally admitted into the system with respect to his employment *437 in Demarest. This employment was rejected because the municipality did not deduct Social Security taxes from any portion of the moneys paid him. In 1971, however, his employment in Demarest as borough attorney was accepted for membership in the fund to the extent of retainer fees paid him.
Fasolo's employment as sewer attorney in Demarest was pursuant to a written contract entered into August 20, 1969. The contract provided that he was to perform legal services for matters arising from the construction of a sewer project in the municipality. The fee to be paid was the lesser of 2 1/4% of the construction costs or $60,000. Subsequently a series of ordinances were passed by the borough establishing the salary for the position. On October 18, 1971 the borough adopted an ordinance establishing the sewer attorney's salary as $5,000 for 1971, from August 1, until the end of the year. The salary was to be paid monthly and was to be inclusive of all legal services except "litigation, arbitration, and condemnations." The exclusion was called for by the agreement of August 20, 1969. The excluded items were to be paid "upon the presentation of bills properly and duly sworn as required by law." The 1972 general salary ordinance provided for a salary to the sewer attorney of $12,000, payable $1,000 monthly. Again it was stipulated that litigation, arbitration and condemnation services would be separately billed. The 1973 salary ordinance was identical with 1972 except that the salary of the sewer attorney was increased to $18,000, payable $1,500 monthly. The 1974 ordinance increased the salary to $25,000 and, as in the case of the previous ordinances, excluded litigation, arbitration and condemnation expenses. A dispute arose, however, within the municipality as to the propriety of this final $25,000 salary. Ultimately the municipality obtained legal advice from an attorney specially hired to determine whether to pay the fee and, as a result, the balance of the $25,000 due Fasolo was paid him. This payment was in addition to a payment to Fasolo in 1974 of $4,917.24 by voucher which apparently was for services related to litigation, arbitration or condemnations.
*438 The record reflects that for some years prior to 1975 there were numerous discussions between PERS and Fasolo with respect to his potential pension. The issues discussed involved his salary as sewer attorney and whether his vouchered fees as borough attorney in Demarest and New Milford would be treated as compensation within N.J.S.A. 43:15A-6 r. As borough attorney Fasolo was paid a retainer fee in each municipality. He also was paid for certain work on the basis of the value for the specific services performed. The fees for such work were billed by Fasolo to the municipality. There seems to be no question but that the vouchered fees were paid to Fasolo with no deductions for pension contributions.
These discussions culminated when after some investigation PERS advised Fasolo by letter of December 17, 1974 that he owed $8,276.09 for contributions on previously unreported income from Demarest, $836.35 for group insurance attributable to his Demarest earnings and $3,861.51 for contributions by reason of his New Milford earnings. PERS also stated that it was billing the municipalities for their payments as well. On January 6, 1975 Fasolo made the requested payments. The consequence was that payments were made on vouchered fees over and above the regular retainers. It also appears that he made contributions as sewer attorney as well.
Notwithstanding Fasolo's payment of the requested sums, PERS was still uncertain as to the items paid him that were compensation for purposes of N.J.S.A. 43:15A-6 r. Accordingly, PERS sought an opinion from the Attorney General as to Fasolo's status. In May 1975 Fasolo reached retirement age. He submitted his retirement application on June 12, 1975. On January 9, 1976 Fasolo's retirement was approved by PERS retroactively to August 1, 1975. The basis was calculated "using the three highest years of reported base salary for the positions of Borough Attorney and Sewer Attorney (including Magistrate's salary and excluding any and all fees)." However this retirement was subject to recalculation when the Attorney General rendered his formal opinion. On October 25, 1976 the *439 Attorney General by formal opinion advised PERS that the $60,000 salary as sewer attorney and the other vouchered fees should not be considered for pension credit. The opinion in part read as follows:
In conclusion, you are advised that for purposes of pension credit, services performed as a part-time municipal attorney or similar professional services for local governmental subdivisions compensated for by a fixed annual retainer are to the extent described above generally regarded to be eligible services for coverage by the Act where the retainer or salary can be demonstrated to be paid under regular salary policies of the governmental entity and as incident to services performed in a governmental office or employment. Those legal or other professional service performed for a fluctuating fee for each item of professional services rendered to the local unit should not be considered to be eligible for pension credit as remuneration for services performed in government office or employment. In this case, when, and based upon all available factual information provided to us, the creditable service and compensation of Fasolo for eligible retirement credit should be limited to his service and compensation as magistrate to the Borough of Tenafly and for his professional services compensated by the fixed annual retainer-salary in the Boroughs of New Milford and Demarest. He does not qualify for any of the other professional services compensated for on a fee basis, including the special $60,000 fee for services rendered in connection with the construction of a sanitary sewage system for the Borough of Demarest.
By letter of November 29, 1976 Fasolo was told by PERS that it had accepted the opinion of the Attorney General. Since the interim basis for payment to Fasolo had reflected his salary as sewer attorney, he had been overpaid. However, Fasolo had made contributions to PERS for fees which were excluded from consideration in computation of his pension and for premiums for contributory insurance which also improperly reflected his fees. Thus he was entitled to a refund of his overpayments. In fact, the overpayments by Fasolo exceeded the overpayments to him, and accordingly he was entitled to a refund of the difference. Fasolo's future payments were to be reduced in accordance with the calculations of PERS.
Fasolo did not accept the ruling of PERS. Rather, he requested a hearing on the matter. A hearing was in fact held before a hearing officer of the Division of Pensions. Ultimately, on July 1, 1980, after the establishment of the Office of Administrative Law, the officer filed his recommended decision. He held that *440 Fasolo's salary as sewer attorney was to be considered for pension purposes. The officer determined that there was a bona fide employment relationship concerning these services and that with respect to the services there was not an independent contractor relationship. The officer held, however, that the vouchered fees were in the nature of work by an independent contractor and accordingly were not compensation as the term is used in N.J.S.A. 43:15A-6 r. Further, he held that the action of PERS in recognizing the vouchered fees for pension purposes and in collecting contributions on the fees did not estop PERS from challenging their inclusion as compensation within N.J.S.A. 43:15A-6 r. PERS, by a decision on August 13, 1980 (described in a letter from PERS to Fasolo dated August 18, 1980), accepted the recommendation of the officer that the vouchered fees not be considered compensation within N.J.S.A. 43:15A-6 r. However, PERS rejected the decision that there had been a bona fide employer-employee relationship with respect to the sewer attorney contract, and accordingly the $60,000 was excluded from the definition of compensation as well. Fasolo appeals from that decision.
We have no difficulty affirming the decision of PERS with respect to the vouchered fees for services to Demarest and New Milford over the retainer. N.J.S.A. 43:15A-6 r provides as follows:
"Compensation" means the base or contractual salary, for services as an employee, which is in accordance with established salary policies of the member's employer for all employees in the same position but shall not include individual salary adjustments which are granted primarily in anticipation of the member's retirement or additional remuneration for performing temporary or extracurricular duties beyond the regular work day or the regular work year. In cases where salary includes maintenance, the retirement system shall fix the value of that part of the salary not paid in money which shall be considered under this act.
It will be noted that it is only a payment made to a person as an employee that is considered as compensation. We are simply unable on the record to conclude the payments to Fasolo for vouchered fees were payments to him as an employee. The *441 hearing officer concluded that these services were in the nature of those performed by an independent contractor. Our examination of the record of Fasolo's testimony, a portion of which we include in the appendix,[*] convinces us that this result could not be avoided. It is clear that Fasolo did much of his work at an outside office the expenses for which must have in effect been paid by many clients. Further, the vouchered payments were based on a traditional method of billing by an independent contractor  payment for the value of services rendered rather than an advance compensation on a salary basis. Thus, payments would not be regular in amount. Finally, we note that since Fasolo had to absorb the overhead expenses attributable to the vouchered work, he may be regarded as simply a conduit for a portion of the money. In sum, we conclude that with respect to vouchered fees Fasolo was not an employee. See Koribanics v. Clifton Bd. of Ed., 48 N.J. 1 (1966).
Fasolo contends that for constitutional reasons fees earned by attorneys as independent contractors must be considered compensation within N.J.S.A. 43:15A-6 r. He asserts that there is no reasonable way to distinguish such fees from compensation earned by other employees. We disagree. Clearly the Legislature may draw reasonable classifications. See Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 80 N.J. 6 (1976), app. dism. 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977). We think that it is perfectly plain that the Legislature may have reasonably concluded that usually employees of a municipality would be more likely to look to that employment to provide for their pensions than would independent contractors who would be more likely to have other sources of income.
Fasolo argues that PERS is estopped from excluding his vouchered fees for pension purposes. He correctly points out that PERS demanded that he make contributions on the basis of *442 such fees and that he acquiesced in this position by making the payments. Nevertheless, we see no basis for such an estoppel. Fasolo made the contributions on January 6, 1975 and retired later in that same year. His employment as borough attorney in New Milford and Demarest had already been completed. It could hardly be contended that as he performed the services as borough attorney he could justifiably be secure in the thought that his payment for services as an independent contractor would be included in his pension calculations. Further, he never received even an interim pension based upon these fees. Thus, this case is distinguishable from Ruvoldt v. Nolan, 63 N.J. 171 (1973), which indicated that equitable considerations could preclude revocation or modification of pensions already awarded. Rather, this case is more like Tubridy v. Consolidated Police, etc., Pension Fund Comm'n, 84 N.J. Super. 257, 263-264 (App. Div. 1964), where we held that the mere fact that pension contributions had been improperly deducted and accepted for pension purposes did not estop the pension board from refusing to pay a pension in excess of that provided by law. In Tubridy, as here, the improper payments from the employee were tendered to him.
The more difficult question in this case relates to Fasolo's employment as sewer attorney. Unfortunately we are not greatly aided by the decision of PERS on this issue. As already noted, PERS held that there was no bona fide employer-employee relationship with respect to this position. While its letter to Fasolo of August 18, 1980 indicated that it considered the record before the hearing officer in making its decision, the letter does not give the basis for rejecting the recommended decision. Rather, it simply recites that "the Board found that the services rendered were of the type usually rendered by an independent contractor and accordingly the Board is constrained by Formal Attorney General Opinion 27-1976." The opinion of the Attorney General referred to was the opinion rejecting both the vouchered fees and the sewer fee for pension purposes.
*443 The hearing officer made the following specific findings with respect to the fee:
(a) the salary amount (to a maximum of $60000) was specifically set forth in a detailed written contract executed in 1969 (Exhibit P-2);
(b) it is uncontroverted that Petitioner performed such services (legal and otherwise) as dealing with the problems of homeowners, contractors and municipal and county authorities, preparing ordinances, resolutions and contracts, reviewing specifications, negotiating with banks regarding bond anticipation notes, conducting field inspections, attending meetings and conferences, analyzing cost studies, traveling to Trenton and Washington, D.C. and pursuing various aspects of the "bonding work" (See Transcript III)  in exchange for the salary he received pursuant to the contract and local ordinances (See Exhibit S-1);
(c) local ordinances dated October 18, 1971, June 19, 1972 and March 12, 1973 (See Exhibit S-1) all state "There shall be paid to the Sewer Attorney a salary for legal services rendered for and in connection with the sanitary sewer projects of the Borough of Demarest * * * inclusive of all legal services except litigation, arbitration, and condemnations, for which latter legal services compensation shall be paid upon the presentation of bills properly and duly sworn to as required by law";
(d) all payments of "salary" monies were net amounts, deductions having been made for social security, withholding taxes, pension contributions and insurance (See Exhibit S-2);
(e) the salary monies were paid to Petitioner on a regular monthly basis (except in 1974), in specific regular amounts (See Exhibits S-2 and S-4); and,
(f) it is uncontroverted (See Petitioner's testimony in Transcript III) that the distribution of the salary monies ($5000 in 1971, $12000 in 1972, $18000 in 1973 and $25000 in 1974) was proportionate to the work done. Thus, the salary was paid for the actual performance of services and not simply to "retain" Petitioner or to cover those general services normally associated with the holding of the Sewer Attorney position.
The decision of PERS in rejecting the conclusion that the sewer fees should be deemed compensation did not suggest that there was any error in the specific findings that led to the officer's ultimate conclusion that there was a "bona-fide employer-employee relationship" between Fasolo and Demarest with respect to the sewer fee.
In fact, we cannot perceive why the $60,000 should not be deemed contractual salary within N.J.S.A. 43:15A-6 r. Initially, we note that in the various ordinances adopted by Demarest authorizing the payments to Fasolo the municipality always *444 referred to the compensation as salary. It is not denied that the usual deductions for taxes and Social Security were taken from the payments. Further, the payments were regularly made. It is true, of course, that Fasolo and Demarest could have established their relationship as that of employer and independent contractor. Yet it is undoubtedly true that in many situations a person desiring work to be done could hire an employee to do it or could contract out work. See In re Local 195 v. State, 176 N.J. Super. 85 (App.Div. 1980). Here the $60,000 payment was established in advance of the work being done, just as it would for any employee. Fasolo did not make a charge after the work was completed on the basis of the reasonable value of the services. Further, there was a similarity between the $60,000 salary and the retainers paid to Fasolo by both Demarest and New Milford as borough attorney. In each case certain services were to be compensated separately on a voucher basis over the basic retainer. While it is true that the $60,000 was far larger than the ordinary municipal retainers, it is difficult to see how this distinction should change the treatment of the basic salary. Certainly in principle Fasolo was to perform certain services for a fixed compensation.
We recognize, of course, that Fasolo's services to Demarest as sewer attorney were unique in the sense that no other person was performing similar work for that municipality. But probably the same may be said for his services in Tenafly as a municipal judge. We believe that most municipalities in New Jersey have only one judge. We also do not doubt that Fasolo as an employee was probably not subject to the same intensity of control that the municipality exercised over other employees. Yet a municipal judge clearly is subject to little municipal control, though PERS agrees that for purposes of N.J.S.A. 43:15A-6 r his salary is compensation. Thus we conclude that Fasolo's salary as sewer attorney must be deemed compensation within N.J.S.A. 43:15A-6 r.
In summary, the decision of PERS is affirmed with respect to the vouchered fees from Demarest and New Milford and reversed *445 with respect to the $60,000 sewer attorney fee. The matter is remanded to PERS for computation of the appropriate pension and for the adjustments in Fasolo's contributions to be made as required by this opinion. We do not retain jurisdiction.
NOTES
[1] Fasolo also has served as municipal judge of the Borough of Tenafly. However, it is not disputed that his salary for that position is compensation as defined by N.J.S.A. 43:15A-6 r.
[2] Apparently he filed two applications at that time, one because of his Demarest employment and one because of his position as municipal judge in Tenafly. Each application contained a certification of the employing agency. We gather that no application was filed for New Milford because that employment had terminated. Of course, Fasolo listed New Milford as an employer on both applications. We perceive that no legal consequence germane to this opinion is derived from the filing of separate applications.
[*] Ed. note: The appendix is not included in the opinion as approved for publication.