266 N.J. Super. 445 (1993)
630 A.2d 289
J. ALBERT MASTRO, APPELLANT,
v.
BOARD OF TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 4, 1993.
Decided July 23, 1993.
*447 Before Judges ANTELL, SKILLMAN and VILLANUEVA.
Richard A. Mastro argued the cause for appellant (J. Albert Mastro, appellant, appearing pro se).
Patrice M. Connell, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; William W. Hart, Jr., Deputy Attorney General, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
*448 This appeal requires us to apply the section of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-10(c), which provides that an initial decision of an Administrative Law Judge (ALJ) shall be "deemed adopted" if the agency fails to issue a final decision in a timely manner.
Appellant is a sixty-eight year old member of the New Jersey Bar who was employed as the municipal court judge in Bernards and Passaic Townships and as the attorney for the Warren Township Sewerage Authority, the Tewksbury Township Planning Board and the Borough of Bernardsville. Appellant has been continuously enrolled in the Public Employees' Retirement System (PERS) since the 1960's, sometime after he became a municipal employee. While employed as the municipal court judge in Bernards and Passaic, appellant was paid solely on a salaried basis, from which pension deductions were made. While employed by Bernardsville and the Warren Township Sewerage Authority, appellant was paid both a salary, which was pension qualified, and vouchered fees billed at an hourly rate, from which no pension deduction was made. While employed by the Tewksbury Township Planning Board from January 1, 1973 to January 1, 1987, appellant was paid solely on a vouchered basis, but effective January 1, 1987, he received a pension-qualified salary and also continued to bill on a vouchered basis for additional services.
The Warren Township Sewerage Authority terminated appellant's employment in September 1988, at which time he decided to retire. After representatives of the Division of Pensions advised appellant that he could continue after retirement to perform legal services for his former municipal employers on a non-salaried basis, appellant tendered his resignations from his remaining public positions and filed an application to retire on a veterans' retirement pension. The Board of Trustees of the Public Employees' Retirement System (the Board) approved appellant's application and he commenced receiving retirement benefits as of January 1, 1989.
*449 Around the time of his retirement, appellant arranged to continue providing certain legal services for Bernardsville and the Tewksbury Planning Board. These arrangements involved submitting vouchers to the municipal agencies for actual services performed rather than receiving a regular salary. As a result, appellant was no longer covered by medical insurance and the municipal agencies did not make deductions for income tax, social security or unemployment compensation.
The Board subsequently concluded that appellant was still employed by Bernardsville and Tewksbury. Consequently, on April 26, 1989, the Board invalidated appellant's retirement, canceled his retirement benefits, and ordered him to refund all benefits paid to that date.
Following appellant's request for a hearing, the matter was transferred to the Office of Administrative Law as a contested case. On February 24, 1992, the ALJ issued an initial decision which concluded that appellant had not continued his employment relationship with Bernardsville and Tewksbury subsequent to his retirement and that the Board had erred in invalidating his retirement. The Board acknowledged receipt of the ALJ's decision on the same day it was issued.
On April 15, 1992, more than 45 days after receiving the ALJ's initial decision, the Board voted to reaffirm its original decision that appellant's retirement was invalid because he was still employed by Bernardsville and Tewksbury. The Board's decision was communicated to appellant by a pro forma letter dated April 23, 1992, which was not accompanied by findings of fact or conclusions of law. Appellant filed a timely notice of appeal with this court. More than three months later, the Board issued its findings of fact and conclusions of law.
N.J.S.A. 52:14B-10(c) provides in pertinent part:
A recommended report and decision ... shall be filed ... with the agency in such form that it may be adopted as the decision in the case and delivered or mailed, to the parties of record with an indication of the date of receipt by the agency head.... The head of the agency, upon a review of the record submitted by the administrative law judge, shall adopt, reject or modify the recommended report *450 and decision no later than 45 days after receipt of such recommendations. Unless the head of the agency modifies or rejects the report within such period, the decision of the administrative law judge shall be deemed adopted as the final decision of the head of the agency.... For good cause shown, upon certification by the director and the agency head, the time limits established herein may be subject to extension.
The Director of the Office of Administrative Law has implemented this section of the APA by adoption of N.J.A.C. 1:1-18.6 to -18.8. N.J.A.C. 1:1-18.6(c) provides:
If an agency head does not reject or modify the initial decision within 45 days and unless the period is extended as provided by N.J.A.C. 1:1-18.8, the initial decision shall become a final decision.
N.J.A.C. 1:1-18.8 provides in pertinent part:
(a) Time limits for ... issuing a final decision may be extended for good cause.
(b) A request for extension of any time period must be submitted no later than the day on which that time period is to expire. This requirement may be waived only in case of emergency or other unforeseeable circumstances.
....
(e) If the agency head requests an extension of the time limit for filing a final decision, he or she shall sign and forward a proposed order to the Director of the Office of Administrative Law and serve copies on all parties. If the Director approves the request, he or she shall within 10 days of receipt of the proposed order sign and issue the order and cause it to be served on all parties.
The Supreme Court has indicated that the "automatic approval mechanism [of N.J.S.A. 52:14B-10(c)] should be applied with caution." King v. New Jersey Racing Comm'n, 103 N.J. 412, 422, 511 A.2d 615 (1986) (quoting Aurentz v. Planning Bd. of Little Egg Harbor Township, 171 N.J. Super. 135, 142, 408 A.2d 140 (Law Div. 1979)). Following King, this court also has been hesitant to conclude that an ALJ's initial decision has been automatically approved as a result of an agency's failure to properly discharge its decision-making responsibilities. See, e.g., Chapel v. Board of Trustees of Pub. Employees' Retirement Sys., 258 N.J. Super. 389, 396-99, 609 A.2d 1294 (App.Div. 1992); Steinmann v. State of N.J., Dep't of Treasury, 235 N.J. Super. 356, 360, 562 A.2d 799 (App.Div. 1988), rev'd on other grounds, 116 N.J. 564, 562 A.2d 791 (1989); DiMaria v. Board of Trustees of Pub. Employees' Retirement Sys., 225 N.J. Super. 341, 345-49, 542 A.2d 498 (App.Div.), certif. denied, 113 N.J. 638, 552 A.2d 164 (1988). *451 However, the cases in which courts have refused to hold that an ALJ's initial decision has been automatically adopted have all involved final decisions which were issued within the time allowed by N.J.S.A. 52:14B-10(c) but were procedurally defective in one respect or another. King v. New Jersey Racing Comm'n, supra, (lack of quorum); DiMaria v. Board of Trustees of Pub. Employees' Retirement Sys., supra, (lack of findings of fact and conclusions of law); Steinmann v. State of N.J., Dep't of Treasury, supra, (same). None of these cases have involved a situation where an agency failed to take any action at all within the time allowed by N.J.S.A. 52:14B-10(c). In fact, King indicated that an ALJ's decision would be deemed automatically adopted if an agency failed to take any action within the statutorily allowed period:

Thus were an administrative agency to proceed in bad faith, or with inexcusable negligence, or gross indifference, or simply to take no action whatsoever that purports "to adopt, reject or modify" the recommended report of the ALJ during the 45-day period following the issuance of the ALJ's initial decision, the "deemed-approved" provision of N.J.S.A. 52:14B-10(c) should be invoked; in that event the ALJ's initial decision should be transformed into the agency's final decision. [103 N.J. at 421, 511 A.2d 615 (emphasis added).]
In this case the Board did not take any action whatsoever within the time allowed by N.J.S.A. 52:14B-10(c). Since the Board received the ALJ's initial decision on February 24, 1992, it was required to adopt, reject or modify that decision by April 9, 1992. Yet the Board did not either issue a final decision by that date or seek to obtain an extension of time. Instead, it waited until April 15, 1992, to summarily reject the ALJ's initial decision.
The Board asserts that the reason for its failure to seek an extension of time for issuance of a final decision was "inadvertence" of its staff. But the Board has not provided any supporting documentation or explanation for this alleged inadvertence. Indeed, the Board failed even to acknowledge that its decision was untimely until after appellant filed his brief with this court.
The Board also asserts that appellant was not prejudiced by its failure to comply with N.J.S.A. 52:14B-10(c). However, the automatic approval mandated by N.J.S.A. 52:14B-10(c) does not require a showing of prejudice. Rather, it provides that if the *452 agency fails to issue a final decision within 45 days, the decision of the ALJ "shall be deemed adopted as the final decision of the head of the agency." (Emphasis added.)
Our conclusion that the ALJ's initial decision must be deemed automatically approved as a result of the Board's failure to take any action within 45 days raises the question whether an agency has the authority to seek correction of an automatically approved decision which it considers to be erroneous. Ordinarily, an administrative agency has the inherent power to reconsider a decision. In re Trantino, 89 N.J. 347, 364, 446 A.2d 104 (1982). Consequently, if the Board had expressly adopted the ALJ's decision but decided that it was erroneous before appellant took action in justifiable reliance thereon, the Board could have reopened the matter and vacated the pension. See Skulski v. Nolan, 68 N.J. 179, 195, 343 A.2d 721 (1975); Ruvoldt v. Nolan, 63 N.J. 171, 183, 305 A.2d 434 (1973). Does an agency possess this power of reconsideration when its final decision has resulted from the automatic approval of an ALJ's initial decision?[1] If an agency is recognized to have this power, it could undercut the salutary objective of N.J.S.A. 52:14B-10(c) "to encourage prompt consideration and disposition of contested cases." King v. New Jersey Racing Comm'n, supra, 103 N.J. at 419, 511 A.2d 615. But if an agency is denied the power to reconsider even a manifestly erroneous decision deemed approved pursuant to N.J.S.A. 52:14B-10(c), the agency could be "thwarted" in the performance of its "regulatory responsibilities." Id. at 424, 511 A.2d 615.
However, even assuming that an automatically approved decision of an ALJ could be subject to reconsideration under appropriate circumstances, the Board has not made the kind of *453 showing which could justify setting aside the ALJ's decision. At a minimum, the ALJ's initial decision constituted a reasonably debatable view of the retirement rights of a person performing part-time professional services for governmental agencies. The eligibility for membership in PERS of persons performing part-time professional services and the calculations of their benefits present difficult problems with which the Board and the courts have struggled for a number of years. The essential problem is that a person performing part-time professional services may be either an employee who receives "compensation" and who therefore is eligible for membership in the pension system or an independent contractor who is not eligible for membership in the pension system. The situation is further complicated by the fact that a professional may provide some services to a governmental entity which are compensated by "salary, for services as an employee" within the intent of N.J.S.A. 43:15A-6(r) and other services compensated on a fee basis for which the professional is deemed to be an "independent contractor." In Formal Opinion No. 27 of 1976, the Attorney General advised the Director of the Division of Pensions that:
[T]he compensation of a part-time municipal attorney and other similar part-time professional positions is covered by the Act to the extent of a regular fixed salary (retainer) covering services directly attributable to the functioning of the public office.... Compensation does not include for purposes of the calculation of the pension benefits provided by the Act those payments for professional services normally billed on a fee basis for each time of work performed in addition to the accepted statutory responsibilities of the government office. [Op. Att'y Gen. of N.J. (1974-77), Formal Op. No. 27 of 1976 at 223.]
The Attorney General further advised that even though a member of the pension system may be "a regular salaried [municipal] attorney to the extent of his retainer (salary)" any additional compensation "clearly is excludable for pension purposes as an `extra' paid to an independent contractor." Id. at 227.
In Fasolo v. Board of Trustees of Div. of Pensions, 181 N.J. Super. 434, 440, 438 A.2d 328 (App.Div. 1981), this court adopted the basic analysis of Formal Opinion No. 27, stating that "it is only a payment made to a person as an employee that is *454 considered as compensation." However, we concluded, contrary to the Attorney General's opinion, that $60,000 paid to Fasolo as borough sewer attorney was salary for which he was entitled to pension credit because he was compensated entirely on a regular salaried basis, from which deductions were made for social security, withholding taxes, insurance and pensions. Id. at 442-44, 438 A.2d 328. We also noted that the municipality could have retained Fasolo to perform the same professional services as an "independent contractor." Id. at 444, 438 A.2d 328. Similarly, in Hiering v. Board of Trustees of Pub. Employees' Retirement Sys., 197 N.J. Super. 14, 19, 484 A.2d 20 (App.Div. 1984), we noted that "[t]he conversion from prior vouchered independent contractor provisions for legal services to salaried employee positions is clearly within the discretion of [local governmental agencies]." Thus Fasolo and Hiering seem to indicate that a professional performing part-time services for a governmental agency may, depending on the method of his compensation, be either an "employee" who is required to be a member of the PERS or an "independent contractor." Therefore, these cases provided a reasonable basis for the ALJ's conclusion that appellant's agreements to provide certain legal services for Bernardsville Township and the Tewksbury Planning Board, for which he is compensated on a vouchered basis solely for actual services performed, with no deductions for social security, withholding taxes or medical benefits, do not make him an "employee" of these municipalities and thus do not preclude him from receiving retirement benefits under PERS.
There also are equitable considerations which militate against allowing the Board to challenge the ALJ's initial decision. Appellant testified without contradiction that he communicated with representatives of the Division of Pensions before filing his application for retirement and was told that he could continue after retirement to perform legal services for his former governmental employers if he were compensated on a vouchered basis. This advice was later confirmed by a letter from the Assistant *455 Director of the Division of Pensions, dated February 3, 1989, which stated:
This is in reference to your recent inquiry regarding your employment status with the Borough of Bernardsville and Township of Tewksbury.
This is to advise you if your relationship between the two employers in question are as stated on the Employment Relationship Questionnaire which you submitted, then there would be no problem with you to accept these positions provided you are paid on the voucher and no social security is deducted from your income. If your status changes from the information on the questionnaire or the number of hours increase, then you could be jeopardizing your pension.
Although appellant retired from his public positions before receiving this letter, he testified without contradiction that he could have been reappointed to those positions if the Board had told him in February 1989 that his performance of legal services for Bernardsville and the Tewksbury Planning Board would result in the invalidation of his pension. Thus, appellant's justifiable reliance upon the advice of the Division of Pensions in pursuing his retirement plans is a further consideration which weighs against reconsideration of the ALJ's decision. See Skulski v. Nolan, supra, 68 N.J. at 199, 343 A.2d 721.
In addition, we note that the Board's untimely decision was not accompanied by findings of fact and conclusions of law, as required by N.J.S.A. 52:14B-10(d). Instead, the Board delayed another three months before finally satisfying this requirement. We have repeatedly indicated that such delays in completion of administrative proceedings are unacceptable. See, e.g., Chapel v. Board of Trustees of Pub. Employees' Retirement Sys., supra, 258 N.J. Super. at 396-99, 609 A.2d 1294; DiMaria v. Board of Trustees of Pub. Employees' Retirement Sys., supra, 225 N.J. Super. at 349, 542 A.2d 498. In Chapel we noted that:
The Board cannot be said to be functioning in good faith compliance with its statutory responsibilities under the APA when it repeatedly fails to heed the content requirements of N.J.S.A. 52:14B-10 in a timely fashion. When the PERS Board of Trustees issues a pro forma rejection of an administrative law judge's decision, as it did here on January 17, 1991, and unilaterally postpones the final decision, it extends the administrative process in a way not contemplated by the Legislature. [258 N.J. Super. at 398, 609 A.2d 1294.]
*456 Although our decision in this appeal rests on the Board's failure to issue any decision whatever within the time period allowed by N.J.S.A. 52:14B-10(c), the Board's violation of other procedural requirements of the APA is yet another reason why this would not be an appropriate case for reconsideration of an ALJ's decision which has been automatically approved because of an agency's failure to issue a timely decision.
Finally, we recognize the dangers of manipulation of the pension system by professionals performing part-time services for government agencies and the Board's understandable desire to preserve the fiscal integrity of the PERS by vigilantly guarding against abuses. Thus, in DiMaria v. Board of Trustees of Pub. Employees' Retirement Sys., supra, 225 N.J. Super. at 354, 542 A.2d 498, we indicated that the Board may consider factors other than simply the method of compensation in determining whether payments to a professional are the salary of an employee or the compensation of an independent contractor. See also Attorney General's Formal Opinion No. 27, supra, at 228-29 nn. 2-5. However, the conflict between the advice which representatives of the Division of Pensions gave appellant and the Board's final decision reflects the continuing confusion which exists in this area of pension law. Therefore, we suggest that the Board consider the adoption of regulations which would provide additional guidance to members of PERS who occupy part-time professional positions and to the staff of the Division of Pensions.
Accordingly, we reverse the final decision of the Board and direct that appellant's pension be reinstated in conformity with the ALJ's initial decision.
NOTES
[1] If an agency has no power to reconsider an ALJ's decision which has been automatically approved pursuant to N.J.S.A. 52:14B-10(c), it is arguable that the agency should be allowed to appeal to this court to seek reversal of a manifestly erroneous decision. See DiMaria v. Board of Trustees of Pub. Employees' Retirement Sys., supra, 225 N.J. Super. at 348 n. 2, 542 A.2d 498 n. 2.