793 A.2d 120 (2002)
349 N.J. Super. 196
Thelmon NEWMAN, Plaintiff-Appellant,
v.
RAMAPO COLLEGE OF NEW JERSEY, Alice Chandler, Interim President of Ramapo College, and The Board of Trustees of Ramapo College, and Thomas W. Dunn, Roland A. Alum, Gail P. Brady, B. Lawrence Branch, Geraldine Reed Brown, Robert Corman, Emily Mann, W. Peter McBride, Arthur C. Ramirez, Ruth E. Spellman, as individual members of the Board of Trustees of Ramapo College, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 2002.
Decided March 21, 2002.
Mark P. Denbeaux argued the cause for appellant in both appeals (Denbeaux & Denbeaux, attorneys; Joshua W. Denbeaux, Westwood, of counsel and on the brief in both appeals).
Charles A. Sullivan argued the cause for appellant in both appeals.
Barbara M. Kleva, Deputy Attorney General, argued the cause for respondents in both appeals (David Samson, Attorney General, of counsel; Nancy Kaplen, Assistant Attorney General, of counsel; Ms. Kleva, Deputy Attorney General, on the brief in A-1241-00T2 and Michael J. Haas, Assistant Attorney General, of counsel; Melissa E. Hager, Deputy Attorney General, on the brief in A-1243-00T2).
Before Judges CIANCIA, PARRILLO and COLEMAN.
The opinion of the court was delivered by CIANCIA, J.A.D.
These related appeals were calendared together and argued before us at the same time. The resolution of one of them moots *121 the other and we choose to combine their dispositions into one opinion. Although various issues are raised, we resolve both appeals upon the determination that a state agency is not at liberty to "reconsider" the "deemed adopted" decision of an administrative law judge, under the present circumstances.
Thelmon Newman was employed by Ramapo College as Director of the Educational Opportunity Fund (EOF). He was a non-tenured, non-teaching, faculty member who had been employed by the college for over twenty-one years. His most recent contract was for a two-year term. Toward the end of the first year of that contract, Newman was informed by the president of the college, Robert A. Scott, that Newman would not be nominated for reappointment as Director of the EOF at the conclusion of his two-year contract. In fact, Newman was removed from the position forthwith, and told he could finish the contract on "special assignment" to the president. Newman appealed the president's decision to the college's Board of Trustees (Board). In turn, the Board sent the matter to the Office of Administrative Law (OAL) as a contested case. Newman also filed an action in the Superior Court, Law Division.
After some initial dispute over which forum could hear what claims, the OAL went forward with hearings concerning the alleged irregularities in the process leading up to the decision not to recommend Newman for reappointment as director of the EOF. The Law Division retained, but has held in abeyance, plaintiff's claims alleging violations of the Conscientious Employee Protection Act and the Law Against Discrimination.[1]
Hearings were held in the OAL over an eleven-day period and the record closed on March 2, 1999. Multiple extensions were granted to the Administrative Law Judge (ALJ) to permit preparation of the recommended decision. On February 25, 2000, ALJ Ken R. Springer issued a twenty-one-page opinion, which found that the college "violated its own written procedures governing reappointment of non-teaching professional staff...." President Scott's determination not to recommend Newman for reappointment was set aside. The only remedy provided Newman was a remand "to the College for compliance with the written procedures for reappointment of non-teaching professional staff in effect at the time of the original decision."
ALJ Springer's recommended decision was received by the Board not later than March 8, 2000. It then had forty-five days to adopt, reject or modify the recommended decision. N.J.S.A. 52:14B-10(c). Alternatively, the Board could seek an extension of the forty-five-day period for good cause, but such request must be made within the initial forty-five-day period, except in cases of emergency or unforeseeable circumstances. N.J.A.C. 1:1-18.8. Here, the Board took no action on the recommended decision within the forty-five-day period. Although it internally acknowledged the need for an extension within those forty-five days, it did not request an extension until nine days after expiration of the forty-five-day period. That request was orally denied and then renewed. Upon the second request, Acting Director and Chief Administrative Law Judge Jeff S. Masin issued a seven-page opinion denying the extension and detailing his reasons. At that point the Board could have appealed the denial of an extension to this court as the final determination *122 of the OAL. R. 2:2-3(a)(2). For reasons not evident in the record, it chose not to do so. Instead, the Board went ahead and issued its own opinion, finding that it had properly complied with all procedures in deciding not to reappoint Newman. The Board subsequently issued a document captioned "Decision on Motion Sua Sponte of the Board of Trustees of Ramapo College of New Jersey," wherein it set forth its rationale and alleged authority for reconsidering the ALJ's decision despite the denial of an extension of time to do so.
In response to all this, Newman did two things. The first action he took was to seek enforcement of ALJ Springer's decision in the Chancery Division of the Superior Court in an action in lieu of prerogative writ. The theory behind that action was that the ALJ's decision was "deemed adopted" pursuant to N.J.S.A. 52:14B-10(c), when the Board failed to issue a final decision in a timely manner. The prerogative writ action was dismissed with prejudice upon the determination of the judge sitting in General Equity that the validity of the competing decisions should be decided in the Appellate Division. Newman's appeal from that dismissal is before us with docket number A 1241-00T2.
Newman also appealed the Board's decision against him, on the merits. That appeal carries docket number A-1243-00T2.
We do not reach the issues raised in A-1243-00T2 because we are persuaded to the merits of the contentions presented in A-1241-00T2. Those issues, as framed by Newman's counsel are:
I. BY OPERATION OF LAW, RAMAPO COLLEGE'S FAILURE TO REJECT THE OAL INITIAL DECISION WITHIN 45 DAYS RESULTED IN THE BOARD'S ADOPTING THE INITIAL DECISION AS ITS FINAL AGENCY DECISION.
II. RAMAPO COLLEGE DID NOT TIMELY APPLY FOR AN EXTENSION OF THE 45-DAY LIMIT; IN ANY EVENT, RAMAPO'S BELATED APPLICATION FOR AN EXTENSION WAS DENIED BY THE OFFICE OF ADMINISTRATIVE LAW, WHICH DENIAL WAS REAFFIRMED UPON RECONSIDERATION AND RAMAPO COLLEGE DID NOT APPEAL THE DIRECTOR'S REFUSAL TO EXTEND THE TIME TO APPLY FOR THE EXTENSION.
III. JUDGE MASIN'S DECISION TO DENY A REQUEST FOR EXTENSION CAN BE REVERSED ONLY BY THE APPELLATE DIVISION.
IV. THERE IS NO INHERENT POWER OF A STATE AGENCY TO IGNORE THE COMMANDS OF THE JERSEY ADMINISTRATIVE PROCEDURE ACT.
We agree with each of these arguments and, as a result, we find that the Board's decision is ultra vires.
In a very real sense, the Administrative Procedure Act (APA) is a legislative compromise. It balances the need and desire for independent administrative fact-finding and administrative due process against the traditional duties, discretion, and prerogatives vested in administrative agencies as part of the Executive Branch of government. See generally In re Appeal of Certain Sections of the Unif. Admin. Procedure Rules, 90 N.J. 85, 90-95, 447 A.2d 151 (1982); Unemployed-Employed Council of N.J. v. Horn, 85 N.J. 646, 660-661, 428 A.2d 1305 (1981); City of Hackensack v. Winner, 82 N.J. 1, 36-37, 410 A.2d 1146 (1980). That balance is struck, in part, by allowing an independent ALJ to hear a contested case and present a recommended decision to the agency. It has *123 been held that the APA guarantees a trial-type hearing for those proceedings, contested cases, where the legal rights or duties of a specific party are required by constitution or statute to be determined by an agency. J.E. on Behalf of G.E. v. State, 131 N.J. 552, 562, 622 A.2d 227 (1993); see also N.J.S.A. 52:14B-1 to -15; N.J.A.C. 1:1-1.1 to21.6; N.J.A.C. 10:48-1.4.
The agency, in turn, is not bound by the initial decision of the ALJ. It may adopt, reject or modify the recommended decision as long as it does so no later than forty-five days after receiving it. N.J.S.A. 52:14B-10(c). For good cause shown upon certification by the director of the OAL and the agency head, the forty-five-day time limit may be extended. Ibid. Regulations adopted by the OAL to implement this portion of the statute provide, in part, that a request for an extension "must be submitted no later than the day on which that time period is to expire. This requirement may be waived only in case of emergency or other unforeseeable circumstances." N.J.A.C. 1:1-18.8(b). If the requested extension is denied by the director of the OAL, that denial constitutes a final decision or action of a state administrative agency and is appealable to this court. R. 2:2-3(a)(2); N.J.S.A. 52:14F-1; see New Jersey Civil Serv. Ass'n v. State, 88 N.J. 605, 612, 443 A.2d 1070 (1982) (OAL director's failure to appoint certain individuals as administrative law judges tantamount to final agency action).
The APA also provides that "[u]nless the head of the agency modifies or rejects the report within such period [forty-five days after it is received] the decision of the Administrative Law Judge shall be deemed adopted as the final decision of the head of the agency." N.J.S.A. 52:14B-10(c). Our courts have applied this "deemer" provision sparingly. If the agency takes substantive action on the ALJ's recommended decision, but such action is procedurally flawed, the deemer provision is generally not applied. See Mastro v. Bd. of Tr., Pub. Employees' Ret. Sys., 266 N.J.Super. 445, 450-451, 630 A.2d 289 (App.Div.1993). Where, however, an agency fails to take any action within the allotted time period to reject or modify the ALJ's recommended decision, then the deemed-adopted provision of N.J.S.A. 42:14B-10(c) should be invoked and the initial decision of the ALJ becomes the final agency decision. King v. New Jersey Racing Comm'n, 103 N.J. 412, 421, 511 A.2d 615 (1986); Mastro, supra, 266 N.J.Super. at 451, 630 A.2d 289.
In this case, the Board failed to take any action to adopt, reject or modify the ALJ's recommended decision within the allotted forty-five days, nor did it seek an extension to do so within that time frame. A similar situation existed in Mastro, and we held that the ALJ's initial decision was deemed adopted. Before we reached that conclusion, we allowed for the possibility that a deemed-adopted decision might be reconsidered by the agency as part of its inherent authority to reconsider decisions, In re Trantino, 89 N.J. 347, 364, 446 A.2d 104 (1982), if appropriate circumstances existed. We indicated that a manifestly erroneous decision deemed adopted could very well constitute an appropriate circumstance. Mastro, supra 266 N.J.Super. at 452, 630 A.2d 289. We were there satisfied that the ALJ's decision constituted a reasonably debatable view of the issues under review and, accordingly, did not afford the agency any basis for reconsideration.
In the present case, we have an additional factual circumstance that did not exist in Mastro, and it serves to lead us to the same result, although without considering whether the ALJ's decision was so erroneous as to permit reconsideration under these circumstances. Unlike Mastro, here we have belated requests by the *124 agency for an extension of time within which to adopt, reject or modify the ALJ's decision. Because those requests were made outside of the forty-five-day period allotted for agency action on the recommended decision, the ALJ's decision was deemed adopted when the requests were made, and those requests can only be construed as seeking permission to reconsider the deemed-adopted decision.
The first of the agency requests, made nine days after expiration of the forty-five-day period, was orally denied, but the record reflects little detail concerning that determination. Sixteen-days after the first request, the agency asked for reconsideration of its application for an extension of time. The second request was denied by Acting Director and Chief ALJ Masin in a seven-page decision that detailed why the agency's request was not based upon an "emergency or other unforeseeable circumstances" within the meaning of N.J.A.C. 1:1-18.8(b). As noted, the decision of Acting Director Masin was not appealed to us as it might have been. Nevertheless, we have reviewed it as part of the appellate record and find it a thorough and thoughtful discussion of all the relevant facts and issues. Judge Masin was well aware of the relevant case law, including King, supra, which he discussed at some length. He was also cognizant of the reluctance shown by courts to apply the deemed-adopted provision against an objecting agency. Nevertheless, in his view this case presented an appropriate circumstance for denial of the application for an extension of time.
The final paragraph of Acting Director Masin's opinion reads:
While I am certainly cognizant of the important policy reasons which mitigate in favor of allowing agency heads to make final decisions in contested cases and am certainly reluctant to deny an agency head the ability to do so, there ultimately must be some point where the legislative provision has application and where, as the court in King, said "the `deemed-approved' provision ... should be invoked." There is in place a well-understood means by which an agency seeking an extension of time due to any number of factors, including the need for additional time for exceptions, replies, receipt of transcripts, review of the record, meeting schedules, etc., can request such an extension and they are granted almost universally. The agency head in this case failed to follow that procedure and has indeed in its most recent arguments shown some serious misunderstanding of the clear language of N.J.S.A. 52:14B-10(c). Under these circumstances, I CONCLUDE that the agency's request for reconsideration should be denied and that the request for an order of extension will remain DISAPPROVED.

The Director's opinion is not before us for review as such and we do not test it by the usual standards. We do, however, find that the decision cannot be characterized as manifestly erroneous such as to have allowed the agency to ignore it and nevertheless go on to issue its own decision.
In the context of this case we also do not evaluate the ALJ's original decision for manifest error,[2] although given the complexity of the issues before ALJ Springer and the reasoning set forth in his twenty-one-page opinion, we could not find that his decision was so wide of the mark as to justify reconsideration by the Board. The greater evil here is not that ALJ Springer may have been wrong in his decision; that *125 decision is not precedential and the college can revisit the issues when next they arise. The ALJ's decision requires no more than that the college undertake certain procedures before again reaching a conclusion concerning Newman's position at the school.
Of much greater concern to us is the integrity of the APA and the regulations promulgated pursuant thereto. As outlined previously, a state agency has a variety of courses legitimately open to it if it chooses to disagree with a recommended decision issued by an ALJ. Those options, or perhaps a good-faith attempt at compliance, however, should constitute the limits of acceptable agency action. An agency cannot use "reconsideration" of an ALJ's deemed-adopted decision as a self-help remedy for its failure to comply with procedures established to address an ALJ's recommended decision in a timely manner or to seek proper recourse through extension mechanisms and, if necessary, the appeals process. To simply deny or ignore the constraints of the law and go forward in breach of them serves only to destroy the balance the Legislature has crafted in this area. Were we to condone the agency action in this matter it would signal approval of a course of conduct that renders meaningless a significant portion of the APA.
Accordingly, we vacate the Board's purported final decision and reinstate ALJ Springer's decision as the final agency determination. Absent a stay pending further appeal, Newman may proceed with the enforcement action he initiated in the Chancery Division of the Superior Court, although that action should have been styled as a summary proceeding pursuant to R. 4:67-6, rather than an action in lieu of prerogative writ.
The issues raised by Newman in A-1243-00T2 are moot and that appeal is dismissed. The Chancery Division order dismissing the complaint in C-260-00 (A-1241-00T2) is vacated. Newman's action in the Chancery Division to enforce the deemed-adopted decision of the Board is reinstated.
NOTES
[1] Other claims may also be pending in the Law Division. The appellate record does not contain a copy of the Law Division complaint.
[2] The Mastro concept of testing the agency's discretion to reconsider a deemed-adopted opinion against the validity of the ALJ's decision was not suggested by our Supreme Court in King, and is not the only approach taken in this court. See e.g., Chapel v. Bd. of Tr. of Pub. Employees' Ret. Sys., Div. of Pensions, 258 N.J.Super. 389, 396-399, 609 A.2d 1294 (App.Div.1992) (dictum) (agency's routine policy of announcing rejection of ALJ's decision within forty-five days but postponing its final decision until well-beyond that time would support application of the deemed-adopted provision); accord New Jersey Racing Comm'n v. Silverman, 303 N.J.Super. 293, 302-304, 696 A.2d 771 (App.Div.1997) (dictum).