**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0296-22

MICHAEL BEHAR,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted November 29, 2023 – Decided December 15, 2023

Before Judges Firko and Susswein.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx8403.

Michael Behar, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Porter Ross Strickler, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Michael Behar appeals from an August 18, 2022 Final Administrative Determination by respondent Board of Trustees (Board) of the Public Employees' Retirement Systems (PERS), finding his post-retirement employment as a full-time investigator with the Division of Law (DOL) violated PERS statutes and regulations and required him to reimburse PERS for retirement benefits he received.  We affirm.

I.

We briefly summarize the procedural history and the factual findings made by the Board.  Behar worked for the Division of Criminal Justice (DCJ) as a Detective 2 State Investigator.  The record does not indicate the length of his employment with the DCJ.  On March 13, 2017, he applied for a Special Service Retirement from PERS under Chapter 366.[1]  On that date, Behar completed an Application for Retirement Allowance and acknowledged three terms and conditions of retirement by checking off boxes on the application which state:

- "I agree to comply with all of the retirement application terms and conditions.

---

[1]  Chapter 366 created the Prosecutors Part of PERS, L. 2001, c. 366, effective Jan. 7, 2022, and codified as N.J.S.A. 43:15A-155 to -161.

- I certify that I have made no pre-arrangement to return to public employment after retirement in any capacity.

- I certify that I have read the Post-Retirement Employment Restrictions."

Behar elected a June 1, 2017, retirement date.

By letter dated May 17, 2017, the Board approved Behar's retirement application at its regular meeting and stated: "[I]f you are considering working after retirement, you should be aware of the restrictions imposed by laws and regulations governing post-retirement employment." The letter also cautioned that "it is your responsibility to inform your prospective employer that you are receiving retirement benefits from a New Jersey public retirement system," and that his retirement benefits "may be suspended or even cancelled entirely" in the event of a violation, and "you will be responsible for the repayment of benefits you were not entitled to receive."

In addition, the letter advised Behar if he became re-employed post-retirement, he may be required to "re-enroll" in his former retirement system or a different retirement system. Behar was instructed to read "Fact Sheet #86," a publication of the Division of Pensions and Benefits, regarding "Post-Retirement Employment Restrictions." The Fact Sheet #86 website address was

3

included in the letter along with a phone number to call if Behar had any questions.

In August 2021, Behar applied for an investigator position with the DOL, which is covered by PERS. He participated in a video interview and stated that he had retired from the DCJ and was receiving a State pension. In November or December 2021, Behar received paperwork to fill out that addressed the pension information. Behar completed the paperwork and returned it to the DOL.

On January 3, 2022, after collecting PERS retirement benefits for four-and-a-half years, Behar began working thirty-five hours per week for the DOL. His annual salary at his new job was $61,898. Behar never notified the Division of Pensions and Benefits (Division) before starting his employment with the DOL.

On January 28, 2022, the Division received a Notification of Employment After Retirement Form from the DOL's External Audit Unit advising of Behar's new post-retirement employment. Based on its investigation, the Division concluded Behar was required to re-enroll in PERS because he was employed full-time after retirement in a PERS covered position, citing N.J.S.A. 15A-57.2 and N.J.S.A. 43:15A-7(d)(4).

In pertinent part, N.J.S.A. 43:15A-57.2 states:

a. Except as provided in subsections b., c., and d. of this section, if a former member of . . . [PERS], who has been granted a retirement allowance for any cause other than disability, becomes employed again in a position which makes him [or her] eligible to be a member of . . . [PERS], his [or her] retirement allowance . . . shall be canceled until he [or she] again retires.

Such person shall be re-enrolled in . . . [PERS] and shall contribute thereto at a rate based on his [or her] age at the time of re-enrollment. . . .

. . . .

b. The cancellation, re-enrollment, and additional retirement allowance provisions of subsection a. of this section shall not apply to a former member of the [PERS] who, after having been granted a retirement allowance, becomes employed again by: (1) an employer or employers in a position or positions for which the aggregate compensation does not exceed $15,000 per year . . . .

[Ibid.]

N.J.S.A. 43:15A-7(d)(4) states in relevant part:

[N]o person in employment, office or position of the State, or an agency, board, commission, authority or instrumentality of the State, for which the hours of work are fixed at fewer than 35 per week shall be eligible to become a member of the retirement system; and no person in employment, office or position with a political subdivision of the State, or an agency, board, commission, authority or instrumentality of a political subdivision of the State, for which the hours of work are fixed by an ordinance or resolution of the political subdivision, or agency, board, commission, authority or

instrumentality thereof, at fewer than 32 per week shall be eligible to become a member of the retirement system. Any hour or part thereof, during which the person does not work due to the person's participation in a voluntary or mandatory furlough program shall not be deducted in determining if a person's hours of work are fixed at fewer than 35 or 32 per week, as appropriate, for the purpose of eligibility and the person's service credit as a member of the system or fund shall include the period of mandatory or voluntary furlough provided the person continues to make contributions based on the person's base salary or compensation.

On February 3, 2022, the Division sent a letter to Behar and the DOL advising he was required to re-enroll in PERS, had to repay any retirement benefits he received after his enrollment, and that his pension benefit would be cancelled. The Division determined it was entitled to retirement benefits Behar received while he should have been enrolled in PERS. The Division informed Behar that he must terminate all PERS-covered employment in order to receive retirement benefits again, and he would have to re-apply for retirement benefits. Thereafter, the Division suspended payment of Behar's retirement benefits effective March 1, 2022.

On February 22, 2022, Behar attempted to obtain a prescription from a pharmacy. The pharmacy told Behar his health benefits were suspended. When

Behar contacted human resources about why his health benefits were suspended, he was told it was because he returned to work.

The next day, Behar contacted PERS, and was advised a letter was sent to him on February 3, 2022, via regular mail, stating his pension benefits were suspended based on his new employment with the DOL.[2] Behar claimed he never received the letter or notification by certified mail, email, or text message that his benefits had been suspended.

Payroll records showed Behar earned $9,011.97 with the DOL from January 3 until February 23, 2022, when he resigned from that position. After Behar confirmed his termination with the DOL, his pension benefits were reinstated effective March 1, 2022. By letter dated March 22, 2022, the Division informed Behar that he was required to be re-enrolled in PERS effective January 1, 2022, as a result of his full-time employment with the DOL and that he had to repay all of the retirement benefits which he received after the required re-enrollment date. The Division also informed Behar as an active DOL employee, he was not entitled to retiree health benefits during that time and had to

---

[2] According to DOL's human resources department, "suspension" is more appropriate than "cancellation" in Behar's situation because the benefits—(1) retirement monthly allowance, (2) medical coverage, and (3) prescription drug coverage—would resume upon his resignation. See N.J.S.A. 43:15A-57.2.

reimburse PERS and the State Health Benefits Program for the benefits he received.

Behar appealed the matter to the Board claiming the DOL interview panel did not inform him that his re-employment would affect his retirement benefits. He also blamed the Division for not contacting him before he started working for the DOL. Behar requested pension benefits for February 2022, and relief from the required repayment of the pension benefits he received in February 2022. The Board rejected these arguments and affirmed.

At its May 18, 2022 meeting, the Board considered Behar's appeal and determined his return to full-time employment with the DOL violated PERS statutes and regulations regarding post-retirement employment. The Board decided Behar was an active employee in a PERS eligible position when he began working for the DOL, and thus, he was required to reimburse the January 2022 retirement benefits he received and was not entitled to benefits for the month of February 2022. The Board permitted Behar to retain the salary he earned from the DOL in January and February 2022, and concluded he did not have to pay pension contributions on the salary he received.

On July 4, 2022, Behar appealed the Board's decision, requesting the Board reconsider its decision on the basis he notified his employer during his

interview and filled out paperwork, thus serving as notification of his potential employment status.  Behar requested the Board "release [his] monthly allowance for March 2022 and not request reimbursement for January 2022."  At its July 20, 2022 meeting, the Board denied Behar's request for reconsideration, finding no genuine issue of material fact existed, and directed the Board secretary to draft a Final Administrative Determination denying his appeal.  On August 5, 2022, Behar received a letter from the Board denying his request for an administrative hearing.

On August 17, 2022, the Board issued a Final Administration Determination denying Behar's appeal and reconsideration request.  The Board relied on N.J.S.A. 43:15A-57.2 and N.J.S.A. 43:15A-7(d)(4), and concluded Behar was required to re-enroll in PERS as of January 3, 2022, and to reimburse PERS for the retirement benefits he received while he was employed with the DOL.  The Board reasoned that its May 17, 2017 retirement approval letter explained the ramifications of Behar returning to public employment while retired and directed him to review the publicly available Fact Sheet #86.  The Board noted Behar's retirement application required him to acknowledge and certify that he had read the rules regarding post-retirement public employment,

and neither Behar nor his new employer, DOL, contacted the Division prior to his return to employment with the DOL.

Because Behar resigned on February 23, 2022, before enrolling in a new Tier 5[3] membership account, he was only entitled to a return of his pension contributions for that account because he did not meet the required minimum age of sixty-five or have the required ten years of service credit for a deferred retirement. Thus, Behar was required to repay the $4,342 retirement check he received for the month of January 2022, and his February 2022 retirement check remained cancelled.

On appeal, Behar contends the Board erred when it determined he was non-compliant with PERS rules and regulations; the Division should have personally notified him before he began working with the DOL about the impact it would have on his PERS pension; and the Board incorrectly found he was

___

[3] The PERS tiers, which are determined by date of enrollment, establish the minimum retirement age. Public Employees' Retirement System (PERS) Member Handbook, 7, 26 (March 2023) https://nj.gov/treasury/pensions/documents/guidebooks/persbook.pdf (last visited Dec. 5, 2023). Pursuant to P.L. 2011, c. 78, Tier 5 employees are those who are eligible for PERS enrollment on or after June 28, 2011, and have minimum service retirement age of sixty-five. By contrast, Behar was previously employed as a Tier 1 employee for which he received retirement benefits. Pursuant to P.L. 2007, c. 92, Tier 1 employees are those that are enrolled in PERS before July 1, 2007, and these employees have a minimum service retirement age of sixty.

personally told if he returned to public employment, he should contact the Division immediately.

## II.

"[We] have 'a limited role' in the review of [agency] decisions." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). "[A] 'strong presumption of reasonableness attaches to [an agency decision].'" In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). "In order to reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole.'" Stallworth, 208 N.J. at 194 (quoting Henry, 81 N.J. at 579-80). The challenging party has the burden of proving an agency action is arbitrary, capricious, or unreasonable. Bueno v. Bd. of Trs. of the Tchrs. Pension & Annuity Fund, 422 N.J. Super. 227, 234 (App. Div. 2011) (citing McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)).

We "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "It is settled that '[a]n administrative

11

agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" E.S v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)).

We affirm the Board's decision because it is supported by the sufficient credible evidence in the record. R. 2:11-3(e)(1)(D). We add the following comments.

The Board had the statutory obligation to cancel Behar's benefits because he became re-employed in a position with the DOL eligible for membership in PERS. N.J.S.A. 43:15A-57.2(a). Such an individual "shall be re-enrolled in PERS and shall contribute thereto at a rate based on his age at the time of re-enrollment." N.J.S.A. 43:15A-57.2(a). The retirement benefits for previous service resume upon subsequent retirement, and retirement benefits for subsequent service also commence at that time if eligible. N.J.S.A. 43:15A-57.2(a).

Moreover, N.J.A.C. 17:2-6.1(h) provides "[r]etired members who return to public employment shall have their previous retirement allowances cancelled and be re[-]enrolled in [PERS]." The Board "owes a fiduciary duty to its

A-0296-22

members to protect the financial integrity of the fund." Francois v. Bd. of Trs., Pub. Emps.' Ret. Sys., 415 N.J. Super. 335, 357 (App. Div. 2010) (citing Mount v. Trs. of Pub. Emps.' Ret. Sys., 133 N.J. Super. 72, 86 (App. Div. 1975)). The Board's duty includes safeguarding against "the dangers of manipulation of the pension system . . . and . . . preserv[ing] the fiscal integrity of the PERS by vigilantly guarding against abuses." Mastro v. Bd. of Trs. Pub. Emps.' Ret. Sys., 266 N.J. Super. 445, 456 (App. Div. 1993). The Board's determination was required by the plain text of the governing statute and was not arbitrary, capricious, or unreasonable.

We also reject Behar's argument that the Board erred by concluding his or DOL's failure to contact the Division prior to his re-employment required the imposition of the penalty. Behar argues Fact Sheet #86 states: "Your employer is required to report your employment to the [Division]." However, failure to contact the Division was not the basis for Behar's penalty. The Board acknowledged it did not receive notice of Behar's re-employment until a month after he began his new position. Therefore, it could not have given any earlier notice regarding the impact of re-employment on his retirement benefits. The Board was unaware Behar had returned to work. The Board's decision was not erroneous because it was based on Behar's re-employment after retirement, and

13

the Board correctly determined his benefits were suspended for the duration of his re-employment.

Behar maintains the Board improvidently based its decision on the creation of a PERS membership account, "an action that never transpired." The Board reasoned that "if a . . . membership account had been created for [Behar] based on [his] new employment, [he] would not have been eligible to receive any retirement benefit since [he] did not have the required minimum age of [sixty-five] to retire (for a Service retirement), or sufficient pension credit (of ten years) to file for a Deferred retirement." This statement was merely an additional reason why Behar was not entitled to pension benefits for his period of re-employment. More importantly, the Board's decision on this discrete issue explained why Behar was not re-enrolled and required to pay pension contributions on the monies he earned during his re-employment.

Behar also challenges the Board's determination he had adequate notice of the restrictions on post-retirement employment. Specifically, the Board found Behar (1) was personally notified that he should contact the Division immediately if he were to decide to return to employment; and (2) he could have availed himself of the publicly available resources on the Division's website, such as Fact Sheet #86. The record supports these findings. Moreover, the

Division's notice of retirement approval to Behar on May 17, 2017, constituted personal notice that his retirement benefits were restricted.

We also reject Behar's contention that PERS was unjustly enriched because he never received an additional benefit for the six weeks he worked because he never re-enrolled in the retirement system. It is undisputed Behar never re-enrolled or paid into a new pension, and he did not work long enough[4] to become a member of the retirement system for his new position with DOL.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] The Final Administrative Determination reasoned that Behar would not be entitled to retirement benefits for his new position if a PERS membership account was created because he neither reached the required retirement age of sixty-five for Service retirement nor had the requisite ten years of pension service credit for Deferred retirement. As such, Behar was not re-enrolled in PERS and not required to pay contributions from his new employment.