NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0191-14T4

JOHN WELSH,

        Appellant,

v.

BOARD OF TRUSTEES, POLICE AND
FIREMEN'S RETIREMENT SYSTEM,

        Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| January 15, 2016 |
| APPELLATE DIVISION |

Submitted December 8, 2015 — Decided  January 15, 2016

Before Judges Yannotti, St. John, and
Guadagno.

On appeal from the Board of Trustees of the
Police and Firemen's Retirement System,
Department of Treasury, PFRS No. 107244.

Feeley & LaRocca, LLC and The Blanco Law
Firm, LLC, attorneys for appellant (Pablo N.
Blanco, of counsel and on the brief; John D.
Feeley, on the brief).

John J. Hoffman, Acting Attorney General,
attorney for respondent (Melissa Dutton
Schaffer, Assistant Attorney General, of
counsel; Danielle P. Schimmel, Deputy
Attorney General, on the brief).

    The opinion of the court was delivered by

GUADAGNO, J.A.D.

John Welsh appeals from the August 5, 2014 final administrative determination of the Board of Trustees (Board) of the New Jersey Police and Firemen's Retirement System (PFRS), denying his request to reactivate and merge his former PFRS pension account with his current PFRS account.  We affirm.

The facts are not in dispute.  Welsh first enrolled in the Public Employee's Retirement System (PERS) on November 1, 1997 when he was working as a security guard with Passaic County.  On October 1, 1999, Welsh's job title changed to corrections officer, and his membership in PERS was transferred to PFRS.

In March 2003, Welsh and another corrections officer were accused of assaulting an inmate.  After a hearing, Welsh was suspended without pay.  In April 2004, Welsh was charged with third-degree aggravated assault.  He resigned by letter dated April 6, 2004.

Welsh maintained that the Passaic County Sheriff (Sheriff) and County Prosecutor (Prosecutor) agreed to resolve the criminal matter with Welsh being admitted into a pre-trial intervention program without having to make any admission of wrongdoing.  Welsh further claimed that he received assurances that he would eventually be allowed to return to serve as a sheriff's officer if he successfully completed the pre-trial intervention program.

On April 7, 2004, a consent order was entered into with the Prosecutor, admitting Welsh in the pre-trial intervention program for a period of six months. The criminal matter was dismissed at the conclusion of the six-month period, on November 10, 2004.

On December 12, 2004, the Sheriff wrote a letter to the Prosecutor inquiring as to Welsh's reinstatement. On December 16, 2004, the Prosecutor advised the Sheriff that he did not recommend Welsh being considered for a position in Passaic County law enforcement.

Welsh's last PFRS pension contribution before he resigned was on March 31, 2003. On December 15, 2004, the New Jersey Division of Pensions and Benefits (Division) sent a letter to Welsh explaining that his PFRS account would expire two years after his last pension contribution, and noting an "Account Expiration Date" of March 31, 2005.

In January 2005, Welsh filed an application with the New Jersey Department of Personnel (DOP) seeking reemployment with the Sheriff's Office, and was advised that his name had been certified to the Sheriff by the DOP as being eligible for reemployment as a corrections officer.

On June 17, 2005, the Sheriff advised the DOP that the Sheriff's Office had submitted Welsh's recommendation in error.

A-0191-14T4

The Sheriff stated that he did not sign the application, but instead, a facsimile stamp had been used without his approval. He also requested the application be rescinded due to the fact that Welsh voluntarily resigned for disciplinary reasons. On July 12, 2005, the DOP approved the Sheriff's request and rescinded Welsh's application.

Welsh appealed to the DOP, and, on December 23, 2005, the DOP issued a final administrative determination upholding the removal of Welsh's name from the reemployment list. Welsh appealed to this court, and we affirmed. We noted that "there is nothing in the record that disputes the Sheriff's representation that the submission was not authorized by him, nor is there anything in the record that would question the fact that the Sheriff stated that it was not in the best interest of the Department to re-employ the appellant." In re Varcadipane and Welsh, No. A-3148-05 (App. Div. Mar. 12, 2007) (slip op. at 8).

Welsh filed a complaint alleging breach of contract and breach of an implied covenant of good faith against the Sheriff's Office. On August 13, 2007, Welsh entered into a settlement agreement with the Sheriff's Office, which provided that, upon passing a fitness for duty examination, he would be reemployed as a corrections officer at the same pay rate he held prior to his resignation. Welsh executed a release that

provided "all of [Welsh's] monetary claims for back pay, pension credits, health benefits, and/or monetary damages as alleged, are hereby dismissed with prejudice."  The agreement further stated that "[t]here will be no monetary contributions, payments, or settlement payments to [Welsh], as such [Welsh] will not receive back pay; pension credits; outstanding medical bills, or the like."  The agreement was filed with the Law Division on October 16, 2007.

On October 29, 2007, Welsh returned to work and was re-enrolled in a new PFRS pension account, effective November 1, 2007.  On June 9, 2008, the County Pension Administrator inquired of the Division whether Welsh's former PFRS account could be reinstated.  The Division responded that Welsh's former PFRS account could not be reinstated because it expired on March 31, 2005, two years after his last pension contribution on March 31, 2003.

On November 1, 2010, Welsh and the Sheriff's Office executed a rider to the settlement agreement, which amended Welsh's "date of reinstatement" from October 29, 2007 to January 28, 2005.  On August 1, 2011, the Civil Service Commission[1] (Commission) granted the Sheriff's Office's request to change

---

[1] On June 30, 2008, a law took effect that abolished the DOP and transferred all its powers and duties to the Civil Service Commission.

Welsh's reinstatement date to January 28, 2005, but with the caveat that it was "for salary step placement and seniority-based purposes only."

In March 2013, the Sheriff's Office requested that the Division combine Welsh's former and current PFRS accounts, "thereby recording his service from November 1, 1997 to present with a break of service between April 6, 2004 [and] January 28, 2005." The County Pension Administrator joined in the request.

On November 7, 2013, the Division denied the request, concluding that Welsh's prior PFRS account expired on March 31, 2005. The Division noted that Welsh's last pension contribution was March 31, 2003; he formally resigned on April 6, 2004; and despite the amended re-hire date, the settlement agreement did not award any back pay or pension credits between April 3, 2003 and October 29, 2007. The Division advised that Welsh could withdraw the prior account's funds and "purchase all, or a portion of, the prior [PFRS] membership under his current PFRS membership[.]"

Welsh appealed the Division's decision to the Board, arguing that the Division erred because: (1) he was not seeking pension credit for the period of the amended reinstatement date (January 28, 2005) to the day he began working again (October 29, 2007); (2) he never withdrew funds from his former PFRS

account; (3) he was only seeking to have the PFRS accounts merged; and (4) that the Division mistakenly denied his request because it believed that he was re-hired on October 29, 2007.

After meeting to consider Welsh's appeal, the Board denied Welsh's request, concluding that he was not reinstated with back pay and did not receive any service credit between April 1, 2003 and October 29, 2007. Welsh appealed and, on August 5, 2014, the Board issued a final administrative determination denying the appeal.

On appeal, Welsh claims that he should be permitted reinstatement of his original pension account because the Board failed to recognize that it is permitted to consider equitable factors to craft a just remedy in these circumstances.

We begin by noting the well-established principles that guide our review. Our review of an administrative agency determination is limited. Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995). We will not upset an agency's factual findings unless they are "arbitrary, capricious or unreasonable, or . . . lacked fair support in the evidence[.]" Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963). We are not bound by an agency's legal conclusions or its interpretation of a statute. Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973). The party

challenging the administrative determination bears the burden of proof. Boyle v. Riti, 175 N.J. Super. 158, 166 (App. Div. 1980).

Welsh claims that because the rider to his settlement agreement amended his reinstatement date to January 28, 2005, his current PFRS account should be merged with his former PFRS account, which expired on March 31, 2005. Welsh further argues that the nunc pro tunc amendment had the effect of reversing the expiration of his former PFRS account because it resulted in shortening his absence from employment to less than two years. In the alternative, Welsh argues that the Division erred because it "failed to recognize that it is permitted to consider equitable factors to craft a just remedy in these circumstances."

The termination of a PFRS account is governed by N.J.S.A. 43:16A-3, which provides in pertinent part:

> (3)     Should any member withdraw his aggregate contributions, or become a beneficiary or die, or if more than 2 years have elapsed from the date of his last contributions to the system, he shall thereupon cease to be a member.
>
> (4)     Should any member resign or be dismissed from the police or fire service of the employing agency and not make application for the return of his aggregate contributions, the retirement system shall upon receiving conclusive advice of such separation, terminate the membership. . . .
>
> [N.J.S.A. 43:16A-3 (emphasis added).]

It is not disputed that Welsh resigned on April 6, 2004, after being charged with aggravated assault of an inmate and his employer agreeing that he could leave in good standing. We are satisfied that his resignation resulted in a termination of the former PFRS membership under N.J.S.A. 43:16A-3(4).

In addition, Welsh's last pension contribution to his former PFRS account was made on March 31, 2003, and there were no contributions made between that time and March 31, 2005. Welsh received notice that his former PFRS account would expire on March 31, 2005. After more than two years elapsed with no pension contributions, his former PFRS account expired pursuant to N.J.S.A. 43:16A-3(3). See Cologna v. Bd. of Trs., Police and Firemen's Ret. Sys., 430 N.J. Super. 362, 375 (App. Div. 2013) (analyzing the legislative history of N.J.S.A. 43:16A-3, which was adopted after a conditional veto rejecting a proposed amendment that would have extended the return to service period from two to three years because the amendment was unnecessarily broad and would lead to a sharp rise in costs).

There are narrow exceptions to N.J.S.A. 43:16A-3 where a PFRS account will not terminate. N.J.A.C. 17:1-2.18 is entitled "Service and salary credit: award of back pay," and provides in pertinent part:

(a) A member who appeals the suspension or termination of the member's employment and who, by award or settlement, becomes entitled to full pay for all or a portion of that employment for the period of such suspension or termination shall receive service credit for the period covered by the award or settlement provided a full normal pension and, if applicable, the contributory group life insurance contribution is received from the member or is deducted from the value of the award. The member must receive full back pay, including normal salary increases before mitigation and the contributions will be computed on the base salaries that the employee would have earned for the reinstated suspended or terminated period. In the event that the amount of back payment, after mitigation, is insufficient to deduct the value of the normal pension contributions and, if applicable, the contributory group life insurance due, such contribution shall be paid by the member to the respective retirement system by certified check or money order.

(b) If a member waives an award of back pay, then the member cannot receive service or salary credit for the period of the award.

. . . .

(f) For those defined contribution retirement programs administered by the Division, the member is not entitled to the employer contributions for the period of the award unless the member receives an award equal to full back pay pursuant to N.J.A.C. 17:1-2.18.

[N.J.A.C. 17:1-2.18.]

A-0191-14T4

Here, the settlement agreement between Welsh and the Sheriff's Office, and its attached rider altering Welsh's reinstatement date to January 28, 2005, do not prevent the former PFRS account from expiring. Welsh's argument that his "absence from employment was for less than two years, from April 6, 2004 to January 28, 2005" focuses on his adjusted resignation and reinstatement dates, rather than the date of his last pension contribution. As we have explained, N.J.S.A. 43:16A-3(3) is unequivocal that the relevant date for purposes of the two-year expiration period is the "date of [the member's] last contributions to the system." Because Welsh failed to make any contributions to his former PFRS account within two years of his last contribution date, March 31, 2003, his PFRS membership expired.

Moreover, Welsh does not qualify for an exception under N.J.A.C. 17:1-2.18. As noted, the regulation requires that a "full normal pension . . . contribution is received from the member or is deducted from the value of the award." N.J.A.C. 17:1-2.18(a). Here, Welsh's settlement agreement expressly prohibited any back pay or pension credit, and provided that "all of [Welsh's] monetary claims for back pay, pension credits, health benefits, and/or monetary damages . . . are hereby dismissed with prejudice." The terms of the agreement provided

that there "will be no monetary contributions, payments, or settlement payments to [Welsh]" and he "will not receive back pay; pension credits; outstanding medical bills, or the like."

The 2010 rider did not alter Welsh's disentitlement to back pay, pension credit, or service credit under the agreement. The rider only requested that Welsh's date of reinstatement be changed to January 28, 2005. Further, when the Commission granted the Sheriff's Office's request to change Welsh's reinstatement date, it expressly limited the application of the rider to apply to "salary step placement and seniority-based purposes only." Therefore, neither the settlement agreement nor its attached rider prevented the termination of Welsh's former PFRS account.

Despite the clear intent of the controlling statute and regulation, Welsh maintains that the Board has "stymied what Welsh and his employer intended" in the settlement agreement, and argues that we should disregard these provisions and remand because the Board should exercise its equitable powers, namely equitable estoppel, to craft an appropriate remedy in this case.

The doctrine of equitable estoppel is "rarely invoked against a governmental entity." Middletown Twp. Policemen's Benevolent Ass'n Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 367 (2000) (quoting Wood v. Borough of Wildwood Crest, 319

N.J. Super. 650, 656 (App. Div. 1999)). The doctrine can be invoked "where interests of justice, morality and common fairness clearly dictate that course." Ibid. (quoting Gruber v. Mayor & Twp. Comm. of Raritan, 39 N.J. 1, 13 (1962)). In Middletown, the Supreme Court explained:

> The essential principle of the policy of estoppel here invoked is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct. An estoppel . . . may arise by silence or omission where one is under a duty to speak or act. It has to do with the inducement of conduct to action or nonaction. . . . The repudiation of one's act done or position assumed is not permissible where that course would work injustice to another who, having the right to do so, has relied thereon.
>
> [Ibid. (quoting Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503-04 (1955)).]

Welsh relies on our opinions in Sellers v. Board of Trustees of the Police and Firemen's Retirement System, 399 N.J. Super. 51 (App. Div. 2008), and Francois v. Board of Trustees, Public Employees' Retirement System, 415 N.J. Super. 335 (App. Div. 2010), in arguing that an equitable remedy is appropriate in this case. In both cases, we applied the doctrine of equitable estoppel to the actions of New Jersey pension boards. However, contrary to Welsh's arguments, both cases are significantly distinguishable because the petitioners in those

A-0191-14T4

cases were able to show detrimental reliance on either their employer's or the pension board's actions.

In Sellers, supra, a thirty-eight-year old dispatcher with Essex County College left his job in order to take a position as a firefighter with Bloomfield Township under the mistaken belief that credit for prior service would exempt him from the prohibitions in N.J.S.A. 43:16A-3, N.J.A.C. 17:4-2.5, and a prohibition against hiring and enrolling in PFRS any officer over thirty-five-years old. 399 N.J. Super. at 52-55.

We noted that changes in the Age Discrimination in Employment Act, 29 U.S.C.A. § 623(a), triggered the development of a practice "whereby the Board ha[d] exercised equitable powers to waive the age requirement on a case-by-case basis[,]" id. at 55, and that, several years before, the Board permitted "at least nine individuals to enroll in PFRS . . . despite the fact they exceeded the maximum age requirement[,]" id. at 57. We also noted the unique overlap of the statutory scheme at issue, which required the petitioner to be enrolled in PFRS in order to be a firefighter, and therefore made the Township's decision to hire him dependent on the Board's PFRS determination. Id. at 60-61. We stated "[a] problem arises in a case, such as this one, where the municipality believes that the age requirement is met and the Board determines, after the

employee has been permanently hired, that the age requirement has not been met." Id. at 61.

Given that the petitioner left his job to be a firefighter, and that he was hired and initially approved by the Board, we remanded the case so that the Board could consider crafting a solution that took into account the equities of the situation, including whether "the government failed to 'turn square corners' with [the petitioner]." Id. at 62. We noted:

> People accepting the firefighter positions in good faith should not be putting their careers and the financial well-being of their families in jeopardy by giving up their current jobs and accepting public employment only to find out later that they do not meet the age requirements for the positions, particularly when all of the relevant information was available to the State and municipality before the commencement of employment.
>
> [Ibid.]

Our decision in Francois is similar. There, the petitioner was an employee of the New Jersey Economic Development Authority (NJEDA), and served on "mobility assignment" for a two-year period as director of the real estate department of the Port Authority of New York and New Jersey (Port Authority). Francois, supra, 415 N.J. Super. at 338.

When initially accepting the mobility assignment, and when it was extended, the petitioner was sent memoranda from the

NJEDA that advised that he "may continue to accrue service credit with the New Jersey State Pension System . . . for retirement purposes during the term of this assignment." Id. at 341, 343. The facts were "clear that . . . at age fifty-three and after approximately twenty-seven years of creditable service . . . [the petitioner] did not want to jeopardize or sacrifice his pension benefits." Id. at 343.

The petitioner eventually advised the NJEDA that he intended to retire and join the Port Authority. Id. at 344. When applying for retirement, the Division did not credit the petitioner's time on mobility assignment. Id. at 345.

In reversing the Division's decision, we cited Sellers and explained that the petitioner received written assurances from the NJEDA before taking the assignment, and that he was "entitled to presume that he would not be penalized by accepting the mobility assignment while remaining on the [NJEDA] payroll and being paid by it." Id. at 353. We explained that there was no authority that required an agency to obtain the approval of the Division before making assignments, or gave the Division the authority to monitor the work assignments of State employees. Id. at 354. Although we limited the wages eligible for the petitioner's pension benefits, we concluded that equitable

considerations entitled him to service credit for the time spent on the mobility assignment. Id. at 355-56.

The petitioners in Sellers and Francois both demonstrated detrimental reliance on express assurances of employment qualification or pension credit either by their employers or the pension boards.  In this case, however, Welsh has not shown detrimental reliance, the essential principle undergirding equitable relief.

Welsh asserts that he and the Sheriff's Office "entered into a settlement agreement which both believed would result in Welsh receiving pension credit for his prior service from November 1, 1997 to August 6, 2004."  The express terms of the agreement, which Welsh and the Sheriff both signed, contradict this claim.  It was an express term of Welsh's release of his lawsuit against the Sheriff's Office, and of his reemployment with them, that he "will not receive . . . pension credits[.]" There is no evidence that Welsh accepted his reinstatement in reliance on receiving pension credit or that his former PFRS account remain active.[2]

---

[2] The only other conditions of Welsh's reinstatement included passing a fitness for duty examination, an assessment of his underlying conduct to ensure that he is not a safety threat, and authorization to return to work from the Prosecutor.

A-0191-14T4

Welsh also argues that the 2010 rider amending his reinstatement date to January 28, 2005 permitted reinstatement of his former PFRS account. Again, there is no evidence that the rider was executed in reliance on receiving pension credit, or that the rider was meant to change the express terms of the settlement agreement, which prohibited Welsh from receiving such credit. There are no assurances in this case that Welsh would continue receiving pension credit, or that his account would remain active, after he resigned. The settlement agreement and rider were executed well after Welsh's PFRS account properly expired. Neither provided any assurances regarding reinstatement or merging of his PFRS accounts, nor induced a course of action by Welsh.

Welsh has not shown with any specificity why justice requires an equitable remedy. Welsh continues to be employed by the Sheriff's Office, still has his current PFRS membership account, and is still entitled to withdraw the funds from his former PFRS account and purchase his former service for credit in his current account.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0191-14T4