**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1219-16T4

J. SHELDON COHEN,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES OF
THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Argued September 12, 2018 – Decided January 24, 2019

Before Judges Messano, Fasciale and Rose.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of Treasury, PERS No. 2-10-242883.

Benjamin Clarke argued the cause for appellant (DeCotiis, FitzPatrick, Cole & Giblin, LLP, attorneys; J. Sheldon Cohen, of counsel; Benjamin Clarke and Gregory J. Hazley, on the briefs).

Amy Chung, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Jeff S. Ignatowitz, Deputy Attorney General, on the brief).

PER CURIAM

From 2001 to 2007, J. Sheldon Cohen, an attorney in private practice and member of a prominent Bergen County law firm, provided legal services to the Borough of Fort Lee (Fort Lee), which enrolled him in the Public Employees' Retirement System (PERS) and deducted pension contributions on Cohen's behalf. In 2009, when Cohen applied for retirement benefits, the Division of Pensions and Benefits (the Division) denied him service credit for these years, concluding he was not an employee of Fort Lee.

The Division rejected Cohen's administrative appeal, reiterating its conclusion that Cohen was "engaged . . . as a contractor, not as an employee . . . ." In its letter to Cohen, the PERS Board of Trustees (the Board) agreed that Cohen "did not have a bona fide employee relationship with [Fort Lee] . . . ."

Cohen again appealed, and the Board transferred the matter to the Office of Administrative Law as a contested case. Following a hearing, the administrative law judge (ALJ) concluded Cohen was not an employee. The Division accepted the findings and conclusions of the ALJ as modified and denied Cohen service credit for the time. This appeal followed.

2

Before us, Cohen argues the Division applied the wrong standard to determine whether he was an employee of Fort Lee, mistakenly utilizing the Internal Revenue Service (IRS) "twenty-factor test," set forth initially in Rev. Rul. 87-41, 1987-1 C.B. 296 (twenty-factor test), instead of IRS Publication 963 (Rev. 11-2014), "Federal-State Reference Guide," (Publication 963), which governs the employment status of "public officials."[1]   He also argues the Division clearly erred regarding his employment status from 2001 to 2003, because Fort Lee executed individual professional services contracts with Cohen as a part-time municipal employee.  Lastly, Cohen contends the Division should be estopped from denying he was an employee because it accepted Fort Lee's contributions on Cohen's behalf, and Cohen reasonably relied upon the Division's conduct.

We have considered these arguments in light of the record and applicable legal standards.  We affirm in part, reverse in part, and remand.

I.

We recognize that "'judicial review of an administrative agency action is limited' because respect is due to the 'expertise and superior knowledge' of an

---

[1] The pagination regarding Publication 963 within this opinion conforms to the record before us rather than the online source.

agency in its specialized field." Francois v. Bd. of Trs., Pub. Emps.' Ret. Sys., 415 N.J. Super. 335, 347 (App. Div. 2010) (quoting Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 223 (2009)). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). "[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for the agency's even though the court might have reached a different result.'" In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

We review de novo purely legal issues and the agency's interpretation of a statute. Russo, 206 N.J. at 27. Nevertheless, "[a]n appellate court should generally defer to the interpretations of a state agency of the statutes and implementing regulations it administers, unless the interpretation is 'plainly unreasonable.'" Francois, 415 N.J. Super. at 347 (quoting In Re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 260 (2010)).

PERS membership is premised upon public employment. N.J.S.A. 43:15A-7; Gladden v. Bd. of Trs., Pub. Emps.' Ret. Sys., 171 N.J. Super. 363,

4

372 (App. Div. 1979). Although the governing statute defines neither "public employment" nor "public employee," it defines "compensation," upon which potential benefits are calculated, as "the base or contractual salary, for services as an employee." N.J.S.A. 43:15A-6(r)(1) (emphasis added).[2]

"[W]hile a person 'eligible for benefits' is entitled to a liberal interpretation of the pension statute, 'eligibility [itself] is not to be liberally permitted.'" Francois, 415 N.J. Super. at 350 (second alteration in original) (quoting Krayniak v. Bd. of Trs., Pub. Emps.' Ret. Sys., 412 N.J. Super. 232, 242 (App. Div. 2010)). The burden is on the applicant to demonstrate eligibility. See, e.g., Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 50-51 (2008) (imposing burden on applicant to prove eligibility for disability retirement benefits). Whether a person performing part-time professional legal services, like Cohen, is an "employee" receiving "compensation," and thus eligible for membership in PERS, or an independent contractor, and therefore ineligible, has been a recurrent, vexing problem. See, e.g., Mastro v. Bd. of Trs., Pub. Emps.' Ret. Sys., 266 N.J. Super. 445, 453 (App. Div. 1993); Hiering v. Bd. of Trs., Pub. Emps.' Ret. Sys., 197 N.J. Super. 14, 19 (App. Div. 1984);

---

[2] The definition is somewhat different for those becoming PERS members after July 1, 2007, but the distinction is inconsequential for our purposes.

A-1219-16T4

Fasolo v. Bd. of Trs., Div. of Pension of N.J. Treasury, 181 N.J. Super. 434, 440 (App. Div. 1981).

Effective January 1, 2008, the Legislature specifically amended the statute to reflect what our case law and the Division had long recognized. Any person providing professional services as an independent contractor, "as set forth in regulation or policy of the . . . [IRS]," is ineligible for membership based on performance of those services. N.J.S.A. 43:15A-7.2(b). In 2010, the Division enacted N.J.A.C. 17:2-2.3(a)(15), codifying this standard.

Even before the Division adopted the regulation, we repeatedly approved use of the twenty-factor test to determine whether an applicant was an "employee." Francois, 415 N.J. Super. at 350-51; see Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 393 N.J. Super. 524, 542 (App. Div. 2007), rev'd on other grounds, 198 N.J. 215 (2009); see also Stevens v. Bd. of Trs., Pub. Emps.' Ret. Sys., 309 N.J. Super. 300, 304 (App. Div. 1998). The twenty-factor test requires consideration of the following: instructions; training; integration; services rendered personally; hiring, supervising, and paying assistants; continuing relationship; set hours of work; full-time required; doing work on employer's premises; order or sequence set; oral or written reports; payment by hour, week, month; payment of business and/or traveling expenses; furnishing

of tools and materials; significant investment; realization of profit or loss; working for more than one firm at a time; making service available to general public; right to discharge; and right to terminate. Rev. Rul. 87-41.

Publication 963 "deals with the general rules for determining whether workers are employees . . . ." While it instructs that "[a]ll the facts and circumstances must be considered in deciding whether a worker is an independent contractor or an employee[,]" Publication 963 gathers "facts" into "three main categories": "(1) Whether the entity has the right to control the behavior of the worker; (2) Whether the entity has financial control over the worker; and (3) The relationship of the parties, including how they see their relationship." Id. at 4-1.

In relevant part, regarding "Behavioral Control," Publication 963 states:

> The nature of the worker's occupation affects the degree of direction and control necessary to determine worker status. Highly-trained professionals such as doctors, accountants, lawyers, engineers, or computer specialists may require very little, if any, instruction on how to perform their specific services.
>
> Attorneys, doctors and other professionals can be employees, however. In such cases, the entity may not train the individuals or tell them how to practice their professions, but may retain other kinds of control, such as requiring work to be done at government offices, controlling scheduling, holidays, vacations, and other conditions of employment.

[Id. at 4-2, -3.]

As to "Financial Control," Publication 963 states that independent contractors have "a genuine possibility of profit or loss," whereas employees "generally receive a salary as long as they work." Id. at 4-3. Someone "paid a contract price" generally has "a genuine possibility of profit or loss," whereas one "paid by the hour, week, or month is typically an employee." Ibid. Publication 963 specifically notes an exception in that "independent contractor attorneys usually bill by the hour." Ibid. In addition, an individual who "makes his or her services available to the public" is likely an independent contractor. Ibid.

"[H]ow [the parties] view their relationship" is evidenced by their "agreements and actions. . . ." Id. at 4-4. A "written agreement . . . may resolve the issue. However, a contractual designation, in and of itself, is not sufficient evidence for determining worker status." Ibid. Publication 963 provides examples of other "facts and circumstances" to consider, for example: filing a W-2 form indicates the employer believes the person is an employee; but, when the person conducts business "in corporate form" he is "not an employee of the government entity"; while providing benefits, such as vacation, sick time, health

insurance, and, most importantly, "benefits under a tax-qualified retirement plan," indicate employee status. Ibid.

In addition, Publication 963 provides special guidance regarding the employment status of a "public official," i.e., "someone who has authority to exercise the power of the government and does so as agent and employee of the government." Id. at 4-6. A "city attorney" is such a public official. Id. at 4-7. However, Publication 963 specifically notes that the Internal Revenue Code defines public officials as employees and requires withholding for income tax purposes, but that for "social security and Medicare . . . taxes, employee status is determined under the common-law control test . . . ." Ibid.

Lastly, Publication 963 states "a critical factor" in determining "whether a [person] is a public official and employee" is "whether there is a provision of . . . a statute establishing the position." Ibid. However, such "statutes should be reviewed to determine whether they establish enough control for the individual to be classified as an employee under the common-law test." Ibid. (emphasis added). Publication 963 provides an extensive hypothetical example of a statute creating the position of "city attorney" that "establish[es] a right of direction and control over a public official and thus classif[ies] the individual as a common-law employee." Id. at 4-8.

II.

With this statutory and regulatory framework in mind, we turn to the facts of this case as determined by the ALJ and adopted by the Board, which are largely undisputed and supported adequately by substantial credible evidence in the record. Herrmann, 192 N.J. at 27-28.

Cohen began practicing law with his firm in 1987 after having been employed by the Public Employment Relations Commission, and serving as a Fort Lee council member. As a result, he earned more than ten years of service credit, which PERS acknowledged and was not at issue. Cohen receives a monthly pension benefit based upon this service time.

Fort Lee re-enrolled Cohen in PERS in 2001, when it appointed him labor counsel pursuant to the first of three, one-year contracts. Each contract's preamble states the agreement is between Fort Lee and Cohen, details the specific services Cohen would provide for an annual retainer, and includes an additional hourly rate for litigation activities. The contracts, and each that followed, required Cohen to maintain malpractice insurance, which he did through his firm. Cohen executed these agreements, and each that followed, on a signature line under his firm's name and following the word "by."

A-1219-16T4

In the years, 2004 through 2007, Fort Lee executed contracts specifically appointing Cohen and his law firm as labor counsel; another set of annual contracts appointed Cohen and his law firm as borough attorney. The contracts provide that the "personnel" performing the duties of labor counsel and borough attorney shall be Cohen "and such other personnel as necessary" under Cohen's direction. The agreements also state that all "[p]ersonnel shall not be employees" of Fort Lee. The compensation is, as before, an annual retainer with additional hourly rates for litigation and special assignments. Typed into the 2004 labor counsel agreement's compensation provision is the following: "All of which shall be pension eligible." The 2004 borough attorney contract does not contain similar language.[3] Each contract in 2005 through 2007 contained similar language regarding "personnel" and represented they were not employees of Fort Lee. Those contracts also stated the compensation, or a specific portion of it, would be "pension eligible."

Fort Lee issued regular payroll checks to Cohen, who deposited them in his firm's account. Cohen took an oath of office as borough attorney in 2004, and Fort Lee issued him an employee identification card designating him an

---

[3] Fort Lee did not initially enroll Cohen in PERS for the additional position of borough attorney until 2005, and therefore, no contributions to PERS were made for 2004 from the compensation for that position.

A-1219-16T4

"[e]ssential [e]mployee." Although Fort Lee provided Cohen with a conference room, fax machine and phones for his work, Cohen used his firm's stationary when conducting borough business. From 2004 to 2007, Cohen missed approximately eleven of the nearly three hundred council meetings, and other members of his law firm attended and provided legal advice.

Fort Lee stopped making pension contributions on Cohen's behalf at the end of 2007, even though Cohen and his firm continued to represent the borough as labor counsel and borough attorney. In May 2009, Cohen applied for service retirement, and the Division's external audit department sent him the "IRS Standard Contractor Vs. Employee Questionnaire" (the questionnaire) to complete. The questionnaire hews closely to the areas of inquiry in the twenty-factor test. Cohen objected, contending that the twenty-factor test had never been applied to determine the employment status of a municipal attorney, and "[t]he test applicable to [his] pension eligibility" was set out in Mastro. The Division responded by telling Cohen he could utilize a format other than the questionnaire, but "the information the questionnaire solicit[ed]" needed to be included in his response. Cohen supplied the Division with a significant amount of information before it made the decision denying eligibility for service credit from 2001 to 2007.

Cohen points to clear errors in the ALJ's initial decision. For example, the ALJ asserted the Board premised its denial of eligibility upon N.J.S.A. 43:15A-7.2(a), which became effective on January 1, 2008. That subsection essentially makes anyone performing professional services for public entities pursuant to a publicly awarded contract ineligible for membership in PERS. In its final decision, the Board clarified that it was not relying on either subsection (a) or (b) of N.J.S.A. 43:15A-7.2, because the statute was not in effect when Cohen's contributions to PERS terminated on December 31, 2007. The Board's decision makes clear that it concluded Cohen was ineligible for service credit because he was not an employee of Fort Lee.

Similarly, the ALJ failed to include, on the list of exhibits admitted in evidence at the hearing, the deposition testimony of the Division's investigator and auditor. The auditor admitted exclusively using the twenty-factor test without consideration of Publication 963, and acknowledged Publication 963's specific references to municipal attorneys. Here too, however, the Board's final decision acknowledged the additional evidence in the record.

Lastly, Cohen points out that the ALJ's decision included an inapposite verbatim quote from the decision in an entirely different case involving a part-

time municipal attorney to whom the Board denied eligibility because he was not a public employee. In this regard, the ALJ was clearly confused.

While we acknowledge these errors, they are of little moment. We recognize the important status of ALJs as factfinders, particularly when, as here, the final agency decision accepts those facts. In re Hendrickson, 235 N.J. 145, 160 (2018). However, "ALJs 'have no independent decisional authority.'" N.J. Election Law Enf't Comm'n v. DiVincenzo, 451 N.J. Super. 554, 566 (App. Div. 2017) (quoting In re Appeal of Certain Sections of Unif. Admin. Proc. Rules, 90 N.J. 85, 94 (1982)). Moreover, as noted, the facts are virtually undisputed, something Cohen acknowledges by arguing in his brief that we should reverse because the Board's decision rests "on a pure, and clear, error or law . . . ." As such, we examine the legal conclusions drawn from the facts, first by the ALJ and later adopted by the Board, in the context of Cohen's specific arguments.

IV.

Cohen argues that the Board applied the wrong test to determine whether he was an employee or independent contractor because only Publication 963, and not the twenty-factor test, governs part-time municipal attorneys. He asserts that the ALJ and the Board incorrectly concluded Publication 963 merely reshuffled the twenty-factor test, noting that the Division issued a directive in

2008 to certifying local government officials, which stated <u>Publication 963</u> factors "replace[d] the [twenty]-factor test."  In particular, Cohen argues <u>Publication 963</u> specifically addresses the status of "public officials," such as a municipal attorney, which is a statutory position.  <u>See</u> N.J.S.A. 40A:9-139.

Initially, we reject Cohen's assertion that the ALJ and the Board failed to consider the <u>Publication 963</u> standards to any appreciable degree.  While more of the ALJ's written decision discussed application of the twenty-factor test to the facts, the decision addressed each of the three general areas of inquiry contained in <u>Publication 963</u> in detail, and, as Cohen acknowledges in his brief, generally concluded they militated in Cohen's favor.  However, the ALJ also considered each factor in the twenty-factor test, most of which weighed heavily against Cohen's status as an employee.

We also disagree with Cohen's premise that <u>Publication 963</u> alone applies. By its own terms, <u>Publication 963</u> recognizes the preeminence of "[t]he common-law rule for determining whether a worker is an employee is whether the . . . recipient (i.e., the government entity) <u>has the right to direct and control the worker as to the manner and means of the worker's job performance</u>." <u>Id.</u> at 4-1 (emphasis added).  The twenty-factor test also recognizes the importance of common law principles in determining whether one is an employee or

contractor.  <u>See</u> Rev. Rul. 87-41.  Moreover, although not controlling in this case, when the Legislature enacted N.J.S.A. 43:15A-7.2(b) in 2008, it clearly directed consideration of all the regulations and policy directives of the IRS in determining whether one who performed professional services was an employee or independent contractor.  In short, we disagree with Cohen's assertion that <u>Publication 963</u> and the twenty-factor test are in direct conflict, and <u>Publication 963</u> solely controls.[4]

We do not fault the ALJ or the Board for not specifically addressing <u>Publication 963</u>'s recognition of municipal attorneys or other statutorily created positions as being presumptively "public officials," and, in turn, public employees.  All the contracts for the position of municipal attorney explicitly named Cohen and his law firm.  While Cohen may have taken an oath of office, other attorneys from his firm clearly exercised the powers and authority of the position on some occasions when Cohen was absent.  None of the cases cited by

---

[4] In contravention of <u>Rule</u> 2:6-11(d), after the briefs were filed in this appeal, Cohen urged us to consider another part's unpublished opinion that addressed the same issue of whether a part-time attorney for a public entity was entitled to PERS service credit.  He urged us to adopt the rationale employed by that panel. However, in that case, the panel remanded the matter to the Board so it would specifically consider IRS guidance, other than the twenty-factor test and the answers furnished to the questionnaire.  Here, the ALJ and the Board considered more than the twenty-factor test.

A-1219-16T4

Cohen — Stomel v. City of Camden, 192 N.J. 137 (2007); Reilly v. Ozzard, 33 N.J. 529 (1960); Loigman v. Twp. Comm. of Twp. of Middletown, 409 N.J. Super. 1 (App. Div. 2009) — present facts similar to this case, i.e., where the public entity appointed and contracted with an individual lawyer and his law firm.

In sum, the Board's application of the undisputed facts regarding Cohen's relationship with Fort Lee during the years 2004 to 2007 to the legal principles animating the PERS enabling statute was not "plainly unreasonable." Francois, 415 N.J. Super. at 347. We affirm the Board's decision regarding those years.

However, it is undisputed that Cohen's relationship with Fort Lee was different during the years 2001 through 2003, when the municipality appointed him alone as municipal labor counsel. The ALJ explicitly made this finding.[5] However, neither he nor the Board addressed what, if any, legal consequence flowed from this difference.

In fact, in applying the twenty-factor test, the ALJ always noted, erroneously, that the relationship from 2001 to 2007 was between Fort Lee and

---

[5] The ALJ also found that Fort Lee's resolutions in 2002 and 2003 authorized execution of contracts with Cohen and his firm. Although they were an exhibit at the hearing, and subject to some confusing testimony, the resolutions are not part of the appellate record.

Cohen <u>and</u> his firm. While the ALJ and Board, in our opinion, placed proper significant emphasis on this fact for the years 2004 to 2007, neither considered any significance to the different contractual relationship in earlier years. In other words, the ALJ's legal conclusions, later accepted by the Board, failed to address the importance of this factual distinction.

While we could remand the matter to the Board for further consideration of this important difference, we choose not to do so. We exercise original jurisdiction, <u>Rule</u> 2:10-5, because the facts are undisputed, the "issue presents predominantly a legal question," and the interests of judicial economy compel resolution of this nearly decade-old dispute. <u>Henebema v. Raddi</u>, 452 N.J. Super. 438, 452 (App. Div. 2017).

Having considered the entire record, and applying principles we enunciated in <u>Fasolo</u>, 181 N.J. Super. at 443-44, we conclude that Cohen was an employee of Fort Lee from 2001 through 2003 when he alone served as labor attorney on a part-time basis. We remand the matter to the Board to direct the Division to adjust Cohen's retirement account and pension to include his compensation for these years.

Lastly, we reject Cohen's estoppel argument regarding the years 2004 through 2007. "The doctrine of equitable estoppel is 'rarely invoked against a

18

governmental entity.'" Welsh v. Bd. of Trs., Police and Firemen's Ret. Sys., 443 N.J. Super. 367, 376 (App. Div. 2016) (quoting Middletown Twp. Policemen's Benevolent Ass'n Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 367 (2000)). In the few instances where it has been applied in pension cases, the appellants "demonstrated detrimental reliance on express assurances of employment qualification or pension credit either by their employers or the pension boards." Id. at 379.

Cohen asserts he detrimentally relied upon information provided by a PERS representative in 2001 regarding the eligibility of a part-time municipal attorney, and direction the Division gave to Fort Lee when Cohen was re-enrolled in PERS at that time. However, there is no evidence that Fort Lee or Cohen ever provided the Division with information regarding Cohen's status after 2004, when there was a material change in his relationship with Fort Lee, and the municipality executed contracts with his law firm.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1219-16T4