**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0988-22

R.E.,

     Petitioner-Appellant,

v.

HORIZON NJ HEALTH,

     Respondent-Respondent.

_____

Submitted February 25, 2025 – Decided May 7, 2025

Before Judges Sumners and Bergman.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Cohen Fineman, LLC, attorneys for appellant (Samuel B. Fineman, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Mark D. McNally, Deputy Attorney General, on the brief).

PER CURIAM

Appellant R.E.[1] appeals from a final agency decision of the Division of Medical Assistance and Health Services (DMAHS) declaring appellant ineligible for Adult Day Health Services (ADHS) through a reversal of an Administrative Law Judge's (ALJ) determination. We affirm.

I.

We summarize the pertinent facts and procedural history from the record. R.E. is diagnosed with "drug-resistant focal epilepsy seizure disorder." He lives at home with his mother, E.E., who is his primary caregiver. R.E. is a Medicaid recipient, and respondent Horizon NJ Health is the managed care organization managing his Medicaid benefits including ADHS services.

Respondent's nurse Laurel Kelly, RN, conducted an assessment of R.E. on August 30, 2021. Based on the results of her assessment and her review of R.E.'s medical history, Nurse Kelly determined that R.E. was not eligible for ADHS. Specifically, Nurse Kelly found that there was no indication that R.E. required skilled nursing services, rehabilitation services, or assistance with his activities

---

[1] We use initials to protect the private medical information of appellant. R. 1:38-3(a).

of daily living (ADL).[2]  Nurse Kelly noted that R.E. has some short-term memory deficits but that he can follow directions with assistance from his mother.  Nurse Kelly also ascertained that R.E. could ambulate on his own and does not require any assistance with toileting or personal hygiene.  However, Nurse Kelly acknowledged that R.E. was provided with an Assisted Daily Health Services Program (ADHSP) in the past through his previous health care provider, under the same regulatory scheme.  By letter of September 20, 2021, Horizon denied R.E. ADHS benefits.  R.E. filed a timely notice of appeal.

The DMAHS transmitted the matter to the Office of Administrative Law.  On March 22, 2022, while the hearing was pending, Horizon nurses Charmaine Ellington, RN, and Francine Grady, RN, conducted a second assessment on R.E.  Both concluded that R.E. was not eligible for ADHS due to his lack of need for skilled nursing services or assistance with ADLs.

At the hearing, Nurse Grady testified and admitted that during seizure periods, R.E. would not be able to perform ADLs.  E.E. testified she observes him daily and provided specific testimony as to how the seizures impacted his

---

[2]  ADL "means an activity of daily living, from among the following list of six separate activities of daily living: (1) Bathing/dressing; (2) Toilet use; (3) Transfer; (4) Locomotion; (5) Bed mobility; and (6) Eating."  N.J.A.C. 10:164-1.2.

ability to function and to care for himself. Her testimony provided examples of his limitations with daily decision-making and how those decisions can be harmful to him.

Dr. Michael Gelfand, R.E.'s treating neurologist since 2015, testified concerning how seizures and postictal state[3] symptoms negatively impacted the petitioner and his ability to perform activities of daily living. Dr. Gelfand opined that adult day care is medically appropriate for R.E. based upon the unpredictability of R.E.'s seizures coupled with the need for safety care during and after a seizure occurs. He stated during the postictal state, R.E. suffers symptoms that include but are not limited to, drowsiness, confusion, nausea, hypertension, headaches or migraines and other disorienting symptoms and emergence from this period is often accompanied by amnesia or other memory defects. However, Dr. Gelfand testified that he did not "know how long [the postictal state] lasts for [R.E.]" or "the extent of [R.E.]'s physical limitations during [the] postictal state." Dr. Gelfand also testified that when R.E. is not in a postictal state, he does not have any ambulation or physical deficits.

---

[3] The postictal state is a temporary group of symptoms one feel's immediately after a seizure and before feeling well again. Postictal State, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/postictal-state (last visited Apr. 29, 2025).

A-0988-22

The ALJ issued a decision reversing Horizon's denial of ADHS to R.E. Although the ALJ determined the burden of proof is on R.E. to demonstrate eligibility for ADHS, he found "Horizon failed to address how the epileptic seizures impacted [R.E.] and his ability to perform ADL[]s." The ALJ concluded, that "petitioner has difficulty in daily decision making and requires cueing/assistance in ADL[]s during a seizure and while in the postictal state" and that ADHS "are medically necessary and appropriate for [R.E.] based upon his diagnosis." Horizon filed exceptions.

The Assistant Commissioner issued a Final Agency Decision reversing the ALJ's "recommended decision." The Assistant Commissioner disagreed with the ALJ's findings and determined that "there is insufficient evidence to establish that [R.E.] satisfies the clinical eligibility criteria necessary to qualify for [ADHS] pursuant to N.J.A.C. 10:164-1.5." She noted that

> [i]n order to qualify, the regulations state that the individual must require limited assistance with a minimum of two [ADLs] provided by the facility, have at least one skilled service provided by the facility, a rehabilitation need, or require supervision and cueing in at least three ADLs and have problems with cognitive functioning.

According to the Assistant Commissioner, the assessments conducted by Horizon "found no indication that [R.E.] required skilled nursing services,

5

rehabilitation services or any assistance with his ADLs" and concluded that R.E.'s "memory deficits and issues with decision making . . . were easily remedied with written reminders."  Moreover, the Assistant Commissioner observed "[t]here is no indication that [R.E.]'s epilepsy requires continuous physician or nursing intervention" and there was no evidence presented that R.E. "actually receives or requires assistance with any of the defined categories of ADLs (ambulating, eating, bathing, dressing, or performing personal hygiene) during these periods" under N.J.A.C. 10:164-1.2.

In reaching her conclusion, the Assistant Commissioner observed that "[t]here is nothing in the record that speaks to how long [R.E.'s postictal] episodes last or which ADLs are affected, if any."  The Assistant Commissioner also found "the testimony that [R.E.]'s seizures occur at most once per week, results in a level of frequency that would not reach the threshold of 'limited assistance' or 'supervision/cueing' support," as those terms are defined at N.J.A.C. 10:164-1.2, such that he would satisfy the skilled nursing service requirement necessary to qualify for ADHS.  The Assistant Commissioner therefore reversed the ALJ's initial decision and denied R.E.'s eligibility for ADHS.

This appeal follows.

A-0988-22

## II.

On appeal, R.E. argues that the Assistant Commissioner's determination reversing the ALJ's decision was arbitrary, capricious, and unreasonable. Initially, R.E. notes the Assistant Commissioner's decision improperly gave significant weight to the testimony of two nurse assessors who never conducted an in-person evaluation of him. Additionally, R.E. contends the Assistant Commissioner disregarded Nurse Grady's admission that R.E. would be unable to perform ADLs during seizure periods. Further, he contends the Assistant Commissioner's finding that his epilepsy does not require continuous physician or nursing intervention contradicts the testimony of Dr. Gelfand. Accordingly, the Commissioner's conclusion that R.E.'s seizures, occurring at most once per week, fail to meet the threshold for "limited assistance" or "supervision/cueing" under N.J.A.C. 10:164-1.2 is both unsupported and undefined within the regulation's framework. R.E. further contends the Assistant Commissioner also ignored the ALJ's critical findings, which emphasized that R.E.'s unpredictable seizures necessitate adult day care for medical appropriateness. He further asserts, the ALJ noted that R.E. experiences postictal symptoms—including confusion, nausea, hypertension, and cognitive deficits—requiring supervision or cueing for ADLs. Given the weight of credible evidence, R.E. contends the

A-0988-22

Assistant Commissioner's reversal of the ALJ's well-reasoned decision was clearly arbitrary and capricious.

Lastly, R.E. contends under the principle of equitable estoppel, respondent is barred from redetermining his eligibility for ASDHSP services, given his prior approval and long-term receipt of these services through a different carrier. R.E. notes equitable estoppel may be invoked against a governmental entity to prevent manifest injustice when there is a knowing and intentional misrepresentation that induces detrimental reliance, citing an unpublished decision.[4] Although conceding that estoppel rarely applies against government agencies, R.E. argues it is warranted when justice, morality, and fairness demand it, citing Welsh v. Bd. of Trs., 443 N.J. Super. 367 (App. Div. 2016). R.E. contends he had already been deemed eligible and had attended the same adult daycare facility for years before the respondent's reversal. Therefore, R.E. argues his case warrants the application of equitable estoppel to prevent arbitrary agency action.

---

[4] We decline to consider RE's argument that rests on an unpublished decision because "[n]o unpublished opinion shall constitute precedent or be binding upon any court." R. 1:36-3.

A-0988-22

Respondent counters by asserting that the Assistant Commissioner's decision was neither arbitrary nor unreasonable, as R.E. failed to prove the eligibility criteria for ADHSP.

III.

We begin our analysis by acknowledging that the scope of our review of administrative agency decisions is limited. R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 260–61 (App. Div. 2014) (citing Karins v. City of Atlantic City, 152 N.J. 532, 540 (1998)). "[A]n appellate court reviews agency decisions under an arbitrary and capricious standard." Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019); see also Melnyk v. Bd. of Educ. of the Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). We owe "substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007); see also I.L. v. N.J. Dep't Hum. Res., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006) ("Deference to an

agency decision is particularly appropriate where interpretation of the [a]gency's own regulation is in issue."). The party challenging the administrative action bears the burden of making that showing. Lavezzi v. State, 219 N.J. 163, 171 (2014).

However, an appellate court is "'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" R.S., 434 N.J. Super. at 261 (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affs. of Dep't of L. & Pub. Safety, 64 N.J. 85, 93 (1973)). "[I]f our review of the record shows that the agency's finding is clearly mistaken, the decision is not entitled to judicial deference." A.M. v. Monmouth Cnty. Bd. of Soc. Servs., 466 N.J. Super. 557, 565 (App. Div. 2021) (citing H.K. v. N.J. Dep't of Hum. Servs., 184 N.J 367, 386 (2005)). The same is true "where an agency rejects an ALJ's findings of fact." Ibid. (citing H.K., 184 N.J. at 384).

The doctrine of equitable estoppel is "rarely invoked against a governmental entity." Welsh v. Bd. of Trs., Police & Firemen's Ret. Sys., 443 N.J. Super. 367, 376 (App. Div. 2016) (quoting Middletown Twp. Policemen's Benevolent Ass'n Local No. 124 v. Township of Middletown, 162 N.J. 361, 367 (2000)). "Equitable estoppel may be invoked against a governmental entity only 'to prevent manifest injustice.'" Berg v. Christie, 225 N.J. 245, 280 (2016)

(quoting O'Malley v. Dep't of Energy, 109 N.J. 309, 316 (1987)). The doctrine of equitable estoppel is limitedly applied to "conduct, either intentionally or under circumstances that induced reliance." Id. at 279 (quoting Knorr v. Smeal, 178 N.J. 169, 178 (2003)). Such conduct "involves 'a knowing and intentional misrepresentation.'" Ibid. (quoting O'Malley, 109 N.J. at 317).

In order to be approved for ADHS through Medicaid, an individual must be in need of:

> 1. At least limited assistance in a minimum of two [activities of daily living (ADLs)] and the facility will provide all of the assistance for the claimed ADL onsite in the facility;
> 2. At least one skilled service provided daily on-site in the facility;
> 3. Rehabilitation services to attain a particular treatment goal(s) for a specified time-limited period as ordered by the individual's attending physician, physician assistant, or advanced practice nurse; or
> 4. Supervision/cueing in at least three ADLs and the facility will provide all of the supervision/cueing for the claimed ADLs on-site in the facility; and, as identified by the assessment instrument prescribed by the Department, the individual:
>> i. Exhibits problems with short-term memory following multitask sequences, and in daily decision making in new situations.
>
> [N.J.A.C. 10:164-1.5(f).]

Eligibility is determined through an interview conducted by a registered nurse, typically an employee of a managed care organization such as respondent.

11

N.J.A.C. 10:164-1.5(a). The burden is on the applicant to demonstrate eligibility. N.J.A.C. 10:164-1.5(e)(4).

The record exhibits that R.E. underwent two assessments—on August 30, 2021 and March 22, 2022—neither of which indicated that he required skilled nursing services or assistance with ADLs. Nurse Kelly acknowledged R.E.'s memory deficits and decision-making issues but found that they were manageable with written instructions and did not necessitate constant supervision or verbal cues. Additionally, Nurse Kelly's testimony and the August 30, 2021 assessment revealed that R.E.'s need for reminders pertained more to chores and errands rather than ADLs as defined in N.J.A.C. 10:164-1.2.

Although Dr. Gelfand and E.E. testified that R.E. experiences seizures approximately once per week, we agree with the Assistant Commissioner's finding that there was no evidence these seizures necessitated emergency intervention or continuous physician or nursing care. Dr. Gelfand testified that R.E. could experience a postictal state following seizures, struggling with obtaining food, water, and using the bathroom, which would affect ADLs. However, Dr. Gelfand admitted that he did not know the duration of R.E.'s postictal state and the extent of his physical limitations impacted ADLs. Indeed, neither Dr. Gelfand nor E.E. provided testimony regarding the duration of R.E.'s

12

postictal episodes, which ADLs were affected, or how ADHS would support R.E. in performing those ADLs.

We concur with the Assistant Commissioner that R.E. did not satisfy his burden of proof showing he qualified for ADHS because he failed to present evidence concerning the duration of his postictal episodes and the specific ADLs necessary to meet the statutory eligibility requirements for ADHS.

Although no dispute exists that R.E. suffers from epilepsy seizure disorder and has temporary physical limitations in performing general ADLs, we conclude the Assistant Commissioner's analysis of his ADHSP eligibility was based on a plain meaning reading of the statute. We give deference to the Assistant Commissioner's decision because she engaged in a proper "interpretation of the [a]gency's own regulation" at issue here. See N.J. Dep't Hum. Res., Div. of Med. Assistance & Health Servs., 389 N.J. Super. at 364. The Commissioner did not reject the ALJ's findings but determined his findings did not satisfy the criteria in order to qualify for ADHSP under N.J.A.C 10:164-1.5. See Monmouth Cnty. Bd. of Soc. Servs., at 565 ("if our review of the record shows that the agency's finding is clearly mistaken, the decision is not entitled to judicial deference" and the same is true "where an agency rejects an ALJ's findings of fact"). We conclude the Assistant Commissioner's determinations

13

were supported by sufficient evidence in the record and were not arbitrary, capricious or unreasonable.

In addition, we are unpersuaded by R.E.'s equitable estoppel argument, because we conclude it is inapplicable in this situation as eligibility determinations are not permanent and are subject to re-assessments. N.J.A.C. 10:164-1.5(b)(1). R.E.'s failure to cite any authority to support his estoppel argument is telling considering the plain language of the administrative code permits a re-assessment. We conclude the Assistant Commissioner's determination did not result in a manifest injustice and estoppel is not warranted.

To the extent we have not specifically addressed any of R.E.'s remaining legal arguments we conclude they are of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

_m.C. Harley_

Clerk of the Appellate Division

A-0988-22